EMMA CUNNINGHAM, ADMINISTRATRIX, *vs.* THE FAIR
HAVEN AND WESTVILLE RAILROAD COMPANY.

Third Judicial District, New Haven, June Term, 1899. ANDREWS, C. J.,
TORRANCE, HAMERSLEY, HALL and ROBINSON, Js.

In an action against a street railway company to recover damages for
personal injuries alleged to have been caused by negligence in allow-
ing its rails to project several inches above the surface of the road-
way, evidence of the condition of the road elsewhere than at the
place of the accident is inadmissible. The previous condition of
the road at the place of the accident may, however, be shown, as
tending to prove a failure to repair the defect and thereby to estab-
lish the negligence of the defendant.

A photograph offered to show the appearance of a physical object which
cannot be produced in court nor inspected by the jury, is second-
ary evidence, and its correctness or accuracy must be established
before it can be admitted; while the strength or cogency of such
preliminary evidence varies with the nature of the proof the photo-
graph is intended to supply.

Having proved the identity of the place, the plaintiff offered a photo-
graph to show the height of the defendant's rails above the ground,
without any evidence of the accuracy of the picture. *Held* that the
trial court erred in admitting it.

As an officer of the court an attorney is responsible for the purity and
fairness of all his dealings in court. If, under the guise of argu-
ment, he places before the jury testimony that has been excluded,
or indirectly testifies himself, by reading books which he knows the
law forbids to be read, he not only subjects himself to a penalty,
but exposes his client to the chance of loss by the immediate dis-
missal of the jury, if the trial court shall upon motion see fit to so
order, or by the forfeiture of the verdict, if one is rendered in his
favor.

Argued June 21st—decided August 1st, 1899.

ACTION to recover damages for personal injuries resulting
in the death of the plaintiff's intestate, brought to the Supe-
rior Court in New Haven County and tried to the jury before
*Shumway, J.;* verdict and judgment for the plaintiff for $1,000
damages, and appeal by the defendant for alleged errors in
the rulings of the court. *Error, judgment set aside and new
trial ordered.*

The plaintiff is administratrix on the estate of Archie Cunningham, deceased. The defendant owns and operates a street railroad in the town of New Haven, running through Chapel street. The defendant is required by its charter "to keep that portion of the streets and avenues over which their road or way shall be laid down, with a space of two feet on each side of their track or way, in good and sufficient repair."

On June 22d, 1898, the said Archie Cunningham was driving a pair of horses, attached to a heavy truck with a high seat, along the southerly side of Chapel street and in an easterly direction. In turning his team to the left diagonally across the street, and diagonally to the rails of the defendant's tracks, for the purpose of crossing to the other side of the street, the left forward wheel of the truck came in contact with the northerly rail of the defendant's east-bound track and caught and slid along on said rail before passing over it. By reason of the sudden jolt thus caused, he was thrown from his seat to the ground in front of the wheel, which passed over his head and caused his death. The accident occurred at a point in Chapel street about midway between Blatchley avenue and Poplar street (which are 569 feet apart) and nearly opposite the middle of a certain vacant lot on the northerly side of Chapel street.

Upon the trial to the jury the plaintiff offered evidence to prove, and claimed to have proved, that the road at the place of accident was out of repair by reason of the fact that deep ruts had been made along the side of the defendant's rails, thereby causing said rails to project several inches above the surface of the road immediately adjoining the same; and that the wheel of the plaintiff's truck caught and slid along the rail because such rail at that point projected above the ground several inches.

The defendant offered evidence to prove, and claimed to have proved, that at the place and time of his accident the roadway was of crushed stone; that the only depression in the road-bed where the wheel of the plaintiff's truck struck the rail as aforesaid, was a depression of from one to one and one eighth inches on the inside thereof, which was neces-

sary to accommodate the flange of the car wheels; that aside from said necessary depression, the road-bed at the place of accident was substantially flush with the rails and hardened by crushed stone, and in good condition; and that at the time of the accident the said Cunningham was not in the exercise of due care.

The plaintiff produced as a witness one Louise C. Willman, and asked her as to the condition of the road from Blatchley avenue to Poplar street. The defendant objected, on the ground the witness's attention should be directed to the spot where the accident took place. The question was admitted and the defendant excepted. In the charge the court instructed the jury that they must find the road to have been unsafe for travel at the place where the accident occurred, and that the condition of the rails at any other place was not material, if the unsafe condition at other places was not the cause of the injury.

The plaintiff also produced as a witness one Joseph Euhrick, and asked him as to the condition of the road for some time prior to the accident. The defendant objected. The court overruled the objection and defendant excepted.

The plaintiff also produced as a witness one John McAvoy, and asked him to state the condition of the road at the point in question at any time within a year. The defendant objected, because the question did not refer to a time either before or after the accident. The court admitted the question and the defendant excepted. The witness was then asked if he knew the condition within a year before the accident, and he answered, "Yes."

The plaintiff also produced as a witness one Peter J. Webber, and asked him the following question: "What was the condition of the track or tracks along by, and near where the accident occurred and at the point where the accident occurred: all along there?" The defendant objected because the inquiry included several questions, and the witness should first be asked where the accident did occur. The court admitted the question and the defendant excepted.

The plaintiff produced and offered in evidence a photograph

of a section of Chapel street between Blatchley avenue and Poplar street, including the place of the accident, claimed to have been taken on the first or second day of July, 1898. For the purpose of laying the foundation for the introduction of said picture in evidence, counsel for the plaintiff inquired of William Painter, one of his witnesses, whether the condition of the street on the 1st or 2d of July was like the condition on the 22d of June, the day of the accident. The witness replied that it was about the same. The witness was then asked whether the picture represented the condition in which the track was on the 22d of June. Counsel for the defendant inquired if the witness were an expert. The court said : "I do not think that is a question that he can answer." The plaintiff offered other evidence tending to show that Chapel street, between Blatchley avenue and Poplar street was in the same condition on July 1st and 2d as on June 22d, and then offered the picture in evidence. The defendant objected to its admission, on the ground that it did not and could not correctly represent whether the rails of the defendant's tracks were above the ground or not, or what distance, if any, they were above the ground ; that it was not reliable evidence to present to the jury on the question as to the height of the rail above the surface of the street; that distortion necessarily results from the angle at which the picture was taken, and from the fact that a portion of the roadway between the point of focus and the camera is of necessity out of focus, and consequently that any elevation represented between said point of focus and the camera would be abnormal in comparison with other objects further distant; that it is not the best evidence or in fact any evidence of the exact height of the rail above the ground at or near the place of accident; that an inspection of the picture itself showed that the artist had specially directed his effort to showing the northerly rail of the south track apparently above the adjoining ground. The court admitted the picture in evidence, and the defendant excepted. Said picture and the negative from which it was printed are annexed to the finding as exhibits.

Counsel for plaintiff undertook to prove that the defendant repaired the road where the accident occurred by covering the road-bed with crushed stone, on the 21st of August following the accident. The court excluded evidence for that purpose. The effort to introduce such evidence was renewed several times and with different witnesses, and every time was excluded. Counsel for the plaintiff, however, in his closing argument to the jury, alluded to this excluded evidence that the defendant first hardened the roadway on Chapel street, between Blatchley avenue and Poplar street, on or about August 21st, 1898. Defendant's counsel objected to this conduct and the court stopped it. Subsequently plaintiff's counsel took up Vol. 41 of the Conn. Reports and referred to the case of *Jacques* v. *Bridgeport Horse R. Co.*, reported therein, where, as he stated, the court had awarded $7,500 as damages to that plaintiff, and was reading from the finding of facts in that case, where it is stated that plaintiff was injured while undertaking to cross over the track of the railroad where the rails were from three to eight inches above the road. The defendant's counsel thereupon objected to such reference, and the court stated that it was improper. Notwithstanding, the plaintiff's counsel thereupon took up Vol. 43 of the Conn. Reports and proceeded to refer to the same case as reported in that volume on page 32, and was proceeding, apparently to the court, to state some facts concerning the conclusion of the litigation in said case, when this was objected to by defendant's counsel, and plaintiff's counsel was stopped by the court. Subsequently counsel for plaintiff in said closing argument, again referred to the evidence which had been offered and excluded on the subject of the condition and repairs of the defendant's roadway subsequent to the accident. Thereupon counsel for the defendant interrupted, objected and moved for a dismissal of the panel, on the ground that the counsel for the plaintiff had in said argument twice alluded improperly to this excluded evidence; and on the ground that he had referred improperly to the case of *Jacques* v. *Bridgeport Horse R. Co.*, as above stated, and claimed that

the reprimand had not healed the difficulty. The court reprimanded plaintiff's counsel in the presence of the jury, and counsel stated in explanation that his reference to the excluded evidence was an inadvertence, not an intentional transgression. The court refused to grant the motion to dismiss the panel, and the defendant excepted.

The appeal assigns error in each of the above rulings.

*John W. Alling* and *Harry G. Day*, for the appellant (defendant).

*Charles H. Fowler*, for the appellee (plaintiff).

HAMERSLEY, J.  The testimony of Louise C. Willman as to the condition of the road at places other than the place of accident, was inadmissible. Possibly in view of the charge of the court the error did not injure the defendant.

There was no error in admitting the testimony of Joseph Euhrick; the existence of the defect for some time prior to the accident tended to establish negligence in failure to repair.

The objection to the question put to the witness McEvoy, certainly in view of his answer, was immaterial; and the objection to the question put to the witness Webber was captious.

A photograph offered for the purpose of proving the appearance of a physical object which cannot be produced in court nor inspected by the jury, is secondary evidence; and its correctness or accuracy, like that of a map or diagram, must be proved, before it can be received. *Alberti* v. *New York, L. E. & W. R. Co.*, 118 N. Y. 77. In *Dyson* v. *New York & N. E. R. Co.*, 57 Conn. 9, 24, the offer of the photographs was accompanied by the evidence of the photographer who took them, as to their accuracy, and of a surveyor, who identified. the points of view. The accuracy sufficient for the admission of a photograph as evidence is a preliminary question of fact to be determined by the trial judge, and the testimony of the photographer is not essential, if other evi-

dence is produced which in fact convinces the court. *McGar* v. *Bristol*, 71 Conn. 657.

It seems to be held in Massachusetts that the action of a trial court upon the proof of sufficient accuracy can never be reviewed by an appellate court (*Van Houten* v. *Morse*, 162 Mass. 414), although it may be by the jury. *Marcy* v. *Barnes*, 16 Gray, 161, 163. We do not see how this preliminary question differs from any other where questions of fact and law may be intermingled. Questions of general policy may be involved, and these are usually questions of law; and for other reasons the conclusions of a trial judge may be so clearly against law that we can to a certain extent review them, as in cases of findings in respect to a reasonable notice to take depositions, or a diligent search for a lost document. *Nolan* v. *New York, N. H. & H. R. Co.*, 70 Conn. 159, 190. The proof of accuracy varies with the nature of the evidence the photograph is offered to supply. When it is offered as a general representation of physical objects as to which testimony is adduced, for the mere convenience of witnesses in explaining their statements, very slight proof of accuracy may be sufficient; but when it is offered as representing handwriting which is to be subjected to minute and detailed examination, or any object where slight differences of height, breadth or length are of vital importance, much more convincing proof should be required. It is common knowledge that as to such matters, either through want of skill on the part of the artist, or inadequate instruments or materials, or through intentional and skillful manipulation, a photograph may be not only inaccurate but dangerously misleading. *Hynes* v. *McDermott*, 82 N. Y. 41; *Geer* v. *Missouri L. & M. Co.*, 134 Mo. 85; *Taylor Will Case*, 10 Abb. Pr. Rep. N. S. 300, 318; *Eborn* v. *Zimpelman*, 47 Tex. 503.

In the case at bar the photograph was not offered as a mere general representation of the *locus in quo;* for that purpose it was immaterial if not irrelevant; a map was appropriate for such purpose and that appears to have been in evidence. Its only relevancy as evidence was to show the height of the rail above the surface of the ground where the accident took

place. Was the rail several inches above the ground, as stated by the witnesses for the plaintiff, or one and one eighth inches on the inside, as stated by the witnesses for the defendant? Instead of an inspection of the ground and rail, a picture is offered. It is evident that for such purpose a photographic picture might be most deceptive, and that reliable proof of its accuracy should be produced and found sufficient by the judge. We are not now called upon to determine the legal correctness of a finding of this kind, nor whether it can be reviewed; the question presented by the record is whether it was error to admit this photograph without any evidence of its accuracy. We believe no case can be found which warrants such action. It must depend on the assumption that a photograph in all cases is to be regarded as an accurate representation unless the contrary is proved,—an assumption opposed to all authority.

The plaintiff undertook to lay the foundation for the introduction of the photograph as evidence, and for this purpose produced testimony tending to show that the condition of Chapel street between Blatchley avenue and Poplar street, was the same on July 1st or 2d, when the photograph was taken, as on June 22d, the day of the accident, and produced no other testimony. The court thereupon, against the objection of the defendant, admitted the photograph. The ground of objection strongly urged by counsel, that this photograph could in no event be admissible in evidence, went perhaps too far, but he did distinctly urge that it did not correctly represent the rails—and there had in fact been no testimony that it did—and urged that the picture itself showed that the artist had endeavored to secure a misleading representation. The record is a little blind, but it is certain that the court admitted the photograph without any evidence of its accuracy, against objection on the ground of its inaccuracy, and apparently upon the theory that the identity of the place being proved, a photograph is admissible without proof of its accuracy. This is error. An inspection of the picture which is before us as an exhibit, and the evident purpose for which it was offered, indicate the error to be material.

The court denied the defendant's motion to dismiss the jury, made after the plaintiff's counsel in his closing argument had twice alluded to evidence not before the jury, and had twice attempted to influence the jury by reading the finding of facts in a similar case reported in the Connecticut Reports. The court has a large discretion in dealing with such a motion. While the power to grant may be clear, the use of that power may not always best promote justice; and the sitting judge has means of discerning the wiser course, which cannot well be spread upon a record. It appears that the evidence alluded to by counsel was for one purpose proper to have been admitted, and this might have inclined the court to accept the explanation that the allusion was an inadvertence.

The improper reading from reports seems to have no explanation; possibly the court thought the counsel had not gone far enough to get anything damaging before the jury. The language actually used does not appear in the finding. The court has power to discharge a jury for just cause. Unlawful acts by a party to a suit or with his connivance, intended to and adapted to improperly influence a jury, are a just cause of dismissal. *State* v. *Woodruff*, 2 Day, 504, 507; *United States* v. *Perez*, 9 Wheat. 579; *State* v. *Allen*, 46 Conn. 531, 547; *Baldwin's Appeal*, 44 id. 37, 41; *Hoxie* v. *Home Ins. Co.*, 33 id. 471, 475; *Richmond's Appeal*, 59 id. 226, 243. The perversion of argument by counsel to the purpose of tampering with a jury must be suppressed. These are considerations for the trial judge to weigh, and we should hesitate in any case to review his decision, without strong reason. As a new trial must be granted in this case, we deem it sufficient to say that the judge might properly have dismissed the jury, without passing upon the claim of error in the refusal.

We have in former decisions referred to this subject, but perhaps not with that unmistakable precision which its importance justifies. An attorney represents his client as an officer of the court and is responsible for the purity and fairness of all his dealings in court. He is bound by oath to

exercise his office "with fidelity as well to the court as to his client." To use his argument for placing before the jury testimony that has been excluded, or for testifying himself directly or indirectly through reading books the law forbids to be read, is not "fidelity to the court." It should be distinctly understood that any attorney who indulges in such unprofessional conduct not only subjects himself to the penalty appropriate to a violation of the attorney's oath, but also exposes the client he represents to a loss of the verdict, to which he might otherwise be entitled.

The judgment of the Superior Court is set aside and a new trial ordered.

In this opinion the other judges concurred.