MAX F. BRUNSWICK *v.* STATEWIDE GRIEVANCE COMMITTEE
(AC 27629)

Flynn, C. J., and McLachlan and Gruendel, Js.

Argued December 5, 2006—officially released September 4, 2007

*Roger J. Frechette,* for the appellant (plaintiff).

*Cathy A. Dowd,* assistant bar counsel, for the appellee (defendant).

*Opinion*

GRUENDEL, J. Rule 3.1 of the Rules of Professional Conduct requires in relevant part that attorneys in our state "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. . . ."[1] The defendant, the statewide grievance committee, reprimanded the plaintiff attorney, Max F. Brunswick, for violating that rule in the course of his representation of a client in an arbitration proceeding. Pursuant to Practice Book § 2-38, the plaintiff filed a petition for judicial review with the Superior Court, which dismissed the appeal. The plaintiff now challenges the propriety of that determination. We affirm the judgment of the Superior Court.

The record discloses the following facts. The plaintiff is an attorney licensed to practice law in Connecticut who represented a client in an arbitration proceeding. On January 11, 2002, an award adverse to the plaintiff's client entered.[2] On January 15, 2002, the plaintiff filed

[1] Subsequent to the referral of the plaintiff, Max F. Brunswick, to the defendant, the statewide grievance committee, rule 3.1 was amended effective January 1, 2007, to add the language, "in law and fact." Because that amendment had no effect on these proceedings, we refer in this opinion to the current revision of rule 3.1.

[2] The arbitration proceeding concerned disputes arising from a lease between John L. Orsini and the plaintiff's client, Interiors of Yesterday, LLC. In its decision, the arbitration panel stated that "the hearing consisted of eleven hearing days [and] eighty exhibits, including dozens of subexhibits. . . . The arbitrators found the testimony of [Interiors of Yesterday, LLC, principal] Kathleen Tarro to be prevaricated and without credibility. . . . The arbitrators also found [that] the conduct of the case by [Tarro] was

a motion to vacate the arbitration award that alleged, inter alia, that the arbitration award was procured by corruption, fraud, undue means or evident partiality on the part of the arbitrators.[3] The court, *Hon. Anthony V. DeMayo*, judge trial referee, held a hearing on the motion to vacate on February 4 and 6, 2002, at the conclusion of which it denied the motion and issued sanctions against the plaintiff and his client for making allegations without reasonable cause.[4] The court thereafter referred the matter to the defendant to investigate

driven purely by a desire to delay the proceeding and was not based upon any meritorious defense. Having heard all of the testimony, reviewed all of the evidence and read all of the briefs, we find in favor of [Orsini] in the amount of $110,000 and award him that sum."

[3] The plaintiff's motion to vacate the arbitration award stated: "Pursuant to [General Statutes] § 52-414 (d) and [General Statutes] § 52-418 (a) . . . the defendant respectfully moves to vacate the award of the arbitrators for the following reasons:

"(1) The arbitrators never took an oath to hear and examine the matter in controversy faithfully and fairly, and to make a just award according to the best of their understanding, as required by § 52-414 (d) . . . .

"(2) The award was procured by corruption, fraud or undue means in violation of § 52-418 (a) (1) . . . .

"(3) There has been evident partiality or corruption on the part of an arbitrator or arbitrators in violation of § 52-418 (a) (2) . . . .

"(4) The arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy, or of other actions by which the rights of the defendant have been prejudiced, in violation of § 52-418 (a) (3) . . . .

"(5) The arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"Wherefore, the defendant respectfully moves to vacate the award of the arbitrators."

[4] Practice Book § 10-5, titled "Untrue Allegations or Denials," provides in relevant part: "Any allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses, to be taxed by the judicial authority, as may have been necessarily incurred by the other party by reason of such untrue pleading; provided that no expenses for counsel fees shall be taxed exceeding $500 for any one offense. Such expenses shall be taxed against the offending party whether that party prevails in the action or not. . . ."

a possible violation of the Rules of Professional Conduct.[5]

On December 2, 2003, the New Haven judicial district grievance panel filed a decision in which it found probable cause to believe that the plaintiff had violated rules 8.4 (3), 3.3 (a) and 3.1 of the Rules of Professional Conduct. A three person reviewing committee subsequently conducted a hearing on the matter. In its decision, the committee found the following facts by clear and convincing evidence: "The [plaintiff] offered no evidence on the allegation relating to fraud, corruption or undue influence. The [plaintiff's] only evidence of partiality on the part of the arbitrator(s) was a fee bill from the attorney for [John L. Orsini, whose demand against the plaintiff's client was being arbitrated], which reflected a conference with the arbitrator selected by [Orsini] prior to the commencement of evidence in the arbitration. Much of the hearing before Judge DeMayo concerned another issue raised by the [plaintiff] regarding the denial of a continuance request during the arbitration. The [plaintiff] never withdrew or modified any of the allegations in the motion to vacate. In response to direct inquiries from Judge DeMayo as to the evidential basis for the allegations of fraud, corruption or undue influence, the [plaintiff] only stated that he had not yet gotten to that part of the matter. At the conclusion of the hearing on the motion to vacate, Judge DeMayo denied the motion and issued sanctions against the [plaintiff] and his client for making allegations without reasonable cause in violation of Practice Book § 10-5."

The reviewing committee found by clear and convincing evidence that the plaintiff violated rule 3.1 in two

[5] The court's referral stated in relevant part that "[t]he court gave [the plaintiff] several opportunities to withdraw the allegations of fraud and corruption but he insisted on going forward. He never took steps to support the allegations, and the court secured the presence of the arbitrators so they could be questioned. Once the arbitrators were present, [the plaintiff] had no questions for them relating to the allegations."

ways. It stated: "The allegation of fraud, corruption or undue influence in procuring the arbitration award was clearly frivolous, as the [plaintiff] had no evidence to support the allegation. With nothing more to go on than his client's statement . . . and with no evidence to offer in court, the [plaintiff] should have withdrawn the allegation. Certainly, by the time of the hearing on the motion to vacate, the [plaintiff] knew that he had no evidence to offer, and no way to prove, the charges he had made of serious misconduct by the arbitrators since he did not have an affidavit to support the allegation. Instead of conceding this upon direct inquiry from the court, the [plaintiff] continued to maintain the allegation despite the absence of any evidence to support it." The reviewing committee further found that "the allegation of evident partiality or corruption on the part of the arbitrator(s) also violated rule 3.1 . . . . The record reflects that the only evidence presented by the [plaintiff] regarding this allegation was the fee bill from [Orsini's] attorney charging for a conference with the arbitrator [Orsini] selected. We find that this evidence, in and of itself, does not support a good faith claim of partiality on the part of the arbitrator, since there was no evidence regarding the substance of this conference."

Upon the plaintiff's request for review, the defendant affirmed the decision of the reviewing committee. The defendant concurred with the reviewing committee's findings that the plaintiff's allegation relating to fraud, corruption or undue influence and his allegation of evident partiality or corruption on the part of the arbitrators constituted violations of rule 3.1. With regard to the first allegation, the defendant stated: "The evidence in the record establishes that the only evidence the [plaintiff] had . . . was his client's statement. Although the [plaintiff] initially may have had a good faith basis to make the allegation in the motion [to vacate the

arbitration award], he certainly did not have a good faith basis to maintain the allegation before the court once his client refused to supply an affidavit in support of the statement." The defendant therefore concluded that the plaintiff's violations of rule 3.1 warranted a reprimand.

Pursuant to Practice Book § 2-38, the plaintiff filed a petition for judicial review with the Superior Court. In its March 22, 2006 memorandum of decision, the court found substantial evidence to support the findings of the review committee and the conclusion that the plaintiff violated rule 3.1. It therefore dismissed the plaintiff's appeal. From that judgment, the plaintiff now appeals to this court.

I

STANDARD OF REVIEW

Before considering the plaintiff's particular claims, we address the standard of review applicable to such grievance appeals. The plaintiff argues that the proper standard by which to evaluate the defendant's finding that he violated rule 3.1 is the clearly erroneous standard. Conversely, the defendant maintains that the applicable standard is the substantial evidence test.[6] A review of the case law reveals a degree of confusion as to the appropriate standard, therefore warranting closer examination.[7]

---

[6] It is undisputed that, in initially determining whether an attorney has violated the Rules of Professional Conduct, the applicable standard of proof in an attorney disciplinary proceeding is clear and convincing evidence. See *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 171–72, 575 A.2d 210 (1990). The parties contest the standard applicable to an appellate challenge to the defendant's determination that a violation transpired.

[7] Standards of appellate review have been described as "the limits of review, or the extent to which, and the manner by which, a court of review will scrutinize the findings of fact, conclusions of law, or rulings of a trial court." R. Maloy, "Standards of Review—Just a Tip of the Icicle," 77 U. Det. Mercy L. Rev. 603, 604 (2000). On that point, the Supreme Court of Pennsylvania noted an important distinction: "Scope of review and standard of review are often—albeit erroneously—used interchangeably. The two

Attorney disciplinary proceedings are "for the purpose of preserving the courts from the official ministration of persons unfit to practise in them." *Ex parte Wall*, 107 U.S. 265, 288, 2 S. Ct. 569, 27 L. Ed. 552 (1883). As our Supreme Court explained nearly one century ago, "[a]n attorney at law admitted to practice . . . as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. As important as it is that an attorney be competent to deal with the oftentimes intricate matters which may be entrusted to him, it is infinitely more so that he be upright and trustworthy." *In re Peck*, 88 Conn. 447, 450, 91 A. 274 (1914).

In Connecticut, our judges possess the "inherent authority to regulate attorney conduct and to discipline the members of the bar." *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 523, 461 A.2d 938 (1983). They "can and ought to be [held responsible] for the fitness of those who enjoy the privileges of the legal profession under their authority and sanction." *In re Peck*, supra, 88 Conn. 451. Accordingly, in

terms carry distinct meanings and should not be substituted for one another. Scope of review refers to the confines within which an appellate court must conduct its examination. . . . In other words, it refers to the matters (or what) the appellate court is permitted to examine. In contrast, standard of review refers to the manner in which (or how) the examination is conducted." (Citation omitted; internal quotation marks omitted.) *Morrison* v. *Dept. of Public Welfare*, 538 Pa. 122, 131, 646 A.2d 565 (1994).

exercising that responsibility, our judges "have empowered the [defendant] to file presentments in Superior Court seeking judicial sanctions against those claimed to be guilty of misconduct. . . . In carrying out these responsibilities, [the defendant acts] as an arm of the court." (Citation omitted; internal quotation marks omitted.) *Sobocinski* v. *Statewide Grievance Committee*, 215 Conn. 517, 526, 576 A.2d 532 (1990). Likewise, it is the Superior Court's inherent supervisory authority over attorney conduct that vests in it jurisdiction to review an order of the defendant. *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 232, 578 A.2d 1075 (1990).

Attorney grievance proceedings are governed by the General Statutes and the rules of practice. See General Statutes § 51-90 et seq.; Practice Book § 2-29 et seq. Those provisions provide methods of procedure that complement, but do not confine, a court's inherent power to discipline its officers. *Pinsky* v. *Statewide Grievance Committee*, supra, 216 Conn. 233; *In re Peck*, supra, 88 Conn. 457.

Adopted by the judges of this state, our rules of practice expressly consider the standard of review appropriate to an appeal from the decision of the defendant. They nevertheless provide little clarity to the clouded question before us. Practice Book § 2-38 (f) provides: "Upon appeal, the court shall not substitute its judgment for that of the [defendant] or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the [defendant] unless the court finds that substantial rights of the respondent have been prejudiced because the [defendant's] findings, inferences, conclusions, or decisions are: (1) in violation of constitutional, rules of practice or statutory provisions; (2) in excess of the authority of the [defendant]; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous

in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, rescind the action of the [defendant] or take such other action as may be necessary. For purposes of further appeal, the action taken by the superior court hereunder is a final judgment." That rule contains multiple, seemingly interchangeable, standards of review. Under Practice Book § 2-38 (f), a court reviewing an order of the defendant finding a violation of rule 3.1, for instance, could evaluate that finding under the clearly erroneous standard *or* the abuse of discretion standard.[8]

Notably, the standard articulated in Practice Book § 2-38 (f) "tracks the language of the corresponding provision of the Uniform Administrative Procedure Act [UAPA], General Statutes § 4-183 (j) . . . ." *Shelton* v. *Statewide Grievance Committee*, 277 Conn. 99, 108 n.7, 890 A.2d 104 (2006). Indeed, "judicial review of [the defendant's] decision to reprimand an attorney, like judicial review of an agency determination under UAPA, is limited, both with respect to the [defendant's] factual findings and its determination regarding the suitability of a reprimand as the sanction to be imposed. . . . Such deferential judicial review reflects the view of the rulemaking authorities that the [defendant] and its subcommittees are to play an integral role in the attorney grievance process." (Citations omitted.) *Johnson* v. *Statewide Grievance Committee*, 248 Conn. 87, 100–101, 726 A.2d 1154 (1999). At the same time, the defendant patently is not an administrative agency as defined

---

[8] Missing from Practice Book § 2-38 (f) is the plenary standard, which is synonymous with de novo review. See *Ammirata* v. *Zoning Board of Appeals*, 264 Conn. 737, 746 n.13, 826 A.2d 170 (2003). In *Pinsky* v. *Statewide Grievance Committee*, supra, 216 Conn. 234–35, our Supreme Court held that plenary review of grievance appeals is inappropriate. Its omission from Practice Book § 2-38 (f), therefore, hardly is surprising.

in General Statutes § 4-166 (1) of our UAPA. *Sobocinski* v. *Statewide Grievance Committee*, supra, 215 Conn. 526. Our Supreme Court has held that the defendant "is not a body in which the legislature has reposed general powers of administration of a particular state program with which it has been given statutory authority to act for the state in the implementation of that program." Id. Rather, the defendant remains "an arm of the court . . . ." (Internal quotation marks omitted.) Id.

In light of the foregoing, two principles emerge. First, appellate review of an attorney disciplinary proceeding is deferential. See *Johnson* v. *Statewide Grievance Committee*, supra, 248 Conn. 101; *Weiss* v. *Statewide Grievance Committee*, 227 Conn. 802, 811, 633 A.2d 282 (1993) ("[a]lthough the [defendant] is not an administrative agency . . . the court's review of its conclusions is similar to the review afforded to an administrative agency decision" [citation omitted]). Likewise, the standards enumerated in Practice Book § 2-38 (f) all are characterized by a degree of deference. The second principle stems from the defendant's unique status as an arm of the court. As a result, the applicable standard of appellate review, while deferential, cannot unduly restrict a reviewing court's inherent power "to inquire into the conduct of their own officers, and to discipline them for misconduct." *In re Peck*, supra, 88 Conn. 457.

The parties to the present appeal disagree as to the applicable deferential standard of review by which to evaluate the finding that the plaintiff violated rule 3.1. The plaintiff claims it is the clearly erroneous standard, while the defendant insists the applicable standard is the substantial evidence test. In separate appeals decided last year, our Supreme Court applied both standards.[9]

---

[9] Subsequent to oral argument before this court, our Supreme Court decided *Statewide Grievance Committee* v. *Burton*, 282 Conn. 1, 917 A.2d 966 (2007). The sole question presented in that appeal was "whether a trial

In *Shelton* v. *Statewide Grievance Committee*, supra, 277 Conn. 109, the court framed the applicable standard of review as follows: "[O]ur review of the [defendant's] decision is confined to determining whether it was supported by substantial evidence." The substantial evidence standard applied in *Shelton* has been described as a test that "is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review." (Internal quotation marks omitted.) *New England Cable Television Assn., Inc.* v. *Dept. of Public Utility Control*, 247 Conn. 95, 118, 717 A.2d 1276 (1998). Plainly, then, substantial evidence and clearly erroneous are not synonymous standards.[10] See *Dickinson* v. *Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (clearly erroneous standard stricter than substantial evidence standard); *Case* v. *Morrisette*, 475 F.2d 1300, 1307 n.35 (D.C. Cir. 1973) (substantial evidence and clearly erroneous not synonymous); *W.R.B. Corp.* v. *Geer*, 313 F.2d 750, 753 (5th Cir. 1963) (same), cert. denied, 379 U.S. 841, 85 S. Ct. 78, 13 L. Ed. 2d 47 (1964). One week after *Shelton* was decided, the court published *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 890 A.2d 509, cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006). Like *Shelton*, *Notopoulos* arose from the defendant's finding of a violation of the Rules of Professional Conduct. In *Notopoulos*, however, the standard of review applied was whether "the [defendant's] finding [was] clearly erroneous." Id., 226.

The distinction between the clearly erroneous and substantial evidence standards is not an academic one.

court has subject matter jurisdiction to adjudicate a presentment complaint . . . alleging professional misconduct by an attorney who already has been disbarred from the practice of law for unrelated misconduct that occurred subsequent to the events alleged in the presentment." Id., 2–3. Because it did not concern the underlying grievance determination, that decision is inapposite to the present case.

[10] Under either standard, of course, a reviewing court may reverse a determination that misapplies the applicable law.

The clearly erroneous standard of review provides that "[a] court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Considine* v. *Waterbury*, 279 Conn. 830, 858, 905 A.2d 70 (2006); see also *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948). The substantial evidence standard is even more deferential. Under the substantial evidence standard, a "reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Internal quotation marks omitted.) *Tarullo* v. *Inland Wetlands & Watercourses Commission*, 263 Conn. 572, 584, 821 A.2d 734 (2003). Significantly, substantial evidence is something *less* than the weight of the evidence.[11] *Rogers* v. *Board of Education*, 252 Conn. 753, 768, 749 A.2d 1173 (2000). The substantial evidence standard "imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and [provides] a more restrictive standard of review than [the] clearly erroneous [standard of review]." (Internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 331, 732 A.2d 144 (1999).

---

[11] The term "substantial evidence" appears to be something of a misnomer. A court's finding is clearly erroneous "when it is not supported by *any evidence* in the record . . . ." (Emphasis added.) *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 345–46, 736 A.2d 824 (1999). If the substantial evidence test "permits less judicial scrutiny" than the clearly erroneous standard of review; *New England Cable Television Assn., Inc.* v. *Dept. of Public Utility Control*, supra, 247 Conn. 118; query how much evidence actually is required to satisfy that highly deferential standard.

Under the clearly erroneous standard, a reviewing court retains authority to reverse a determination that finds some support in the record if it has a definite and firm conviction that a mistake has been made. No comparable exception exists under the substantial evidence standard.[12] Yet, it is that exception—that rare circumstance where, despite the evidence in the record, a reviewing court nevertheless is left with a definite and firm conviction that a mistake has been made— which preserves and vindicates the court's inherent authority to discipline its officers. For that reason, the clearly erroneous standard, itself very deferential, is the preferable standard of review in attorney grievance appeals.

That conclusion finds further support in the plain language of Practice Book § 2-38 (f), which indicates that, in attorney grievance appeals, substantial evidence review itself is subject to a clearly erroneous consideration. Section 2-38 (f) provides in relevant part that a reviewing court "shall affirm the decision of the [defendant] unless the court finds that substantial rights of the respondent have been prejudiced because the [defendant's] findings, inferences, conclusions, or decisions are . . . (5) *clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record* . . . ." (Emphasis added.) That provision suggests that the ultimate determination is whether a given

[12] Both the clearly erroneous and substantial evidence standards are highly deferential. The only practical difference between the two is the "definite and firm conviction that a mistake has been made" exception. In light of the fact that the defendant is an arm of the court, which retains an inherent authority over the discipline of its officers, we see no reason why that exception should not apply to review of attorney disciplinary proceedings. To the contrary, great is the potential harm in the instance in which, under the substantial evidence test, a reviewing court is left with a definite and firm conviction that a mistake has been made but nevertheless is compelled to affirm because the determination is supported by evidence in the record.

finding is clearly erroneous, as informed by the substantial evidence in the record. A court reviewing an attorney disciplinary proceeding, therefore, retains its inherent authority over the discipline of its officers in those instances when, despite the evidence in the record, it nevertheless is left with a definite and firm conviction that a mistake has been made.[13] With that standard in mind, we turn to the plaintiff's claims.

## II

## THE DEFENDANT'S FINDING

The plaintiff claims that the defendant's finding that he violated rule 3.1 in two distinct ways is clearly erroneous. We address each finding in turn.

## A

We consider first the defendant's finding that the plaintiff's allegation of evident partiality or corruption on the part of the arbitrators violated rule 3.1. Rule 3.1 requires in relevant part that attorneys "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ." In *Texaco, Inc.* v. *Golart,* 206 Conn. 454, 538 A.2d 1017 (1988), our Supreme Court adopted the test for frivolousness set forth in the comment to rule 3.1. Accordingly, a claim or defense is frivolous (a) if maintained primarily for the purpose of harassing or maliciously injuring a person, (b) if the lawyer is unable either to make a good faith argument on the merits of the action, or (c) if the lawyer is unable to support the action taken by a good faith argument for an extension, modification or reversal of existing law. Id., 464. In *Schoonmaker* v. *Lawrence Brunoli, Inc.,* 265 Conn. 210, 255, 828 A.2d 64 (2003), the court

---

[13] In its most recent decision involving an attorney grievance appeal, our Supreme Court applied the clearly erroneous standard of review. See *Notopoulos* v. *Statewide Grievance Committee,* supra, 277 Conn. 226.

indicated that the test is an objective one.[14] Accord 2 G. Hazard & W. Hodes, The Law of Lawyering (3d Ed. Sup. 2007) § 27.12 ("[r]ule 3.1 adopts an objective as opposed to a subjective standard"); J. MacFarlane, "Frivolous Conduct Under Model Rule of Professional Conduct 3.1," 21 J. Legal Prof. 231 (1997) (same); 2 Restatement (Third), Law Governing Lawyers § 110, comment (d), p. 172 (2000) ("frivolous position is one that a lawyer of ordinary competence would recognize as so lacking in merit that there is no substantial possibility that the tribunal would accept it"). On appeal, the defendant contends that a reasonable lawyer could not make a good faith allegation of evident partiality or corruption on the part of the arbitrators in the present case.

At the hearing on the motion to vacate the arbitration award, the plaintiff introduced into evidence the affidavit of attorney's fees from Vincent McManus, Jr., the attorney for Orsini, the plaintiff in the underlying arbitration. That document contained a charge for a one and one-half hour conference with an arbitrator prior to the commencement of the arbitration proceedings. The plaintiff informed the court that the document related to the third allegation of the motion to vacate regarding partiality on the part of the arbitrators.[15] The

[14] The plaintiff relies on the decision of our Supreme Court in *Engelke* v. *Wheatley*, 148 Conn. 398, 171 A.2d 402 (1961), to support his contention that the appropriate test is a subjective one. He misreads that precedent, which states that "counsel . . . should not make a claim of error of this type unless, as an officer of the court, he both actually and reasonably believes that the finding in question was made without evidence. If such a claim is made recklessly or without an actual and reasonable belief that it is factually true, it would be good ground for disciplinary measures." Id., 411. As a reasonableness standard signifies an objective test, *Engelke* thus comports with the Supreme Court's later invocations of an objective test to evaluate allegedly frivolous claims.

[15] The plaintiff stated: "Partiality, number three, on the part of an arbitrator by having an hour and one-half conversation with him before the hearing, which he billed for."

plaintiff subsequently asked the arbitrator in question, attorney J. Michael Sulzbach, whether the one and one-half hour conference ever occurred. Sulzbach testified that it did not. Following that single question, the plaintiff stated, "That's all I have." Opposing counsel at that point interjected: "That's it? That's the only question he was asked? This is the corruption?" The plaintiff then opined to the court: "The point of my argument is not that the conversation occurred, but that Mr. McManus billed for it to his client, and then submitted the bill with his application for attorney's fees to impose that charge on us. And if he claims that it occurred, and he billed for it, then it's our argument that he should be estopped from claiming that it did not occur. *The argument is not that it occurred.*" (Emphasis added.) The plaintiff later reiterated that sentiment, stating that "I didn't say [McManus] spoke to [Sulzbach]. I never claimed that. I claimed he billed an hour and one half speaking to him."

The plaintiff presented no evidence in support of his allegation that "[t]here has been evident partiality or corruption on the part of an arbitrator or arbitrators in violation of [General Statutes] § 52-418 (a) (2)" other than the aforementioned affidavit of attorney's fees. Although all three arbitrators were compelled to testify at the hearing, the plaintiff asked them no questions concerning his allegation of evident partiality or corruption.[16] Following a hearing, the reviewing committee concluded that the plaintiff lacked a good faith basis

---

[16] At the conclusion of the first day of the motion to vacate hearing, the court told the plaintiff that "[t]here hasn't been any evidence today to support the [allegations of] corruption, fraud or undue means, partiality and corruption, misconduct or any of this. What do we do with this? . . . Your burden is to put evidence on as to these items. . . . I'm going to order [the arbitrators] to be here Wednesday morning at 9:30, and you had better be prepared to prove these allegations with them present. . . . I want to hear the evidence to support allegations against three members of the bar in a pleading in this court."

for his allegation. It stated: "The record reflects that the only evidence presented by the [plaintiff] regarding this allegation was the fee bill from [McManus] charging for a conference with the arbitrator [Orsini] selected. We find that this evidence, in and of itself, does not support a good faith claim of partiality on the part of the arbitrator, since there was no evidence regarding the substance of this conference."

The first question to be decided is whether, armed with the affidavit of attorney's fees concerning the conference with Sulzbach, the filing of the plaintiff's motion to vacate the arbitration award violated rule 3.1. We conclude that it did not. The commentary to rule 3.1 provides in relevant part that "[t]he filing of an action . . . for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery." Attorneys in Connecticut are not required, at the time a pleading is filed, to substantiate the allegations contained therein with evidentiary support. Practice Book § 10-1 requires only that each pleading "contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved . . . ." In light of the conference with the arbitrator detailed in the affidavit of attorney's fees, a reasonable lawyer could maintain a good faith allegation of partiality or corruption on the part of an arbitrator.

That determination does not end our inquiry. The defendant contends that the stricture of rule 3.1 is not limited to pleadings. We agree. Rule 3.1 proscribes not only the commencement of a frivolous proceeding, but also the assertion of frivolous issues therein. By its plain language, it prohibits an attorney from asserting or controverting at any time in the course of a given proceeding a claim on which the attorney is unable to maintain a good faith argument on the merits. See

Annotated Model Rules of Professional Conduct (4th Ed. 1999) p. 301 (rule 3.1 prohibits "frivolous or baseless conduct in the course of litigation"). It is axiomatic that, when an attorney continues to pursue a legal claim at trial, that attorney is asserting a legal claim. We see no practical reason why the requirement of rule 3.1 should be confined to the pleading stage of the proceedings, particularly when the rule itself contains no such restriction.[17] Moreover, our analysis is informed by rule 3.4 of the Rules of Professional Conduct, which provides in relevant part that "[a] lawyer shall not . . . (5) [i]n trial, allude to any matter that . . . will not be supported by admissible evidence . . . ."

We find instructive the decision of the Supreme Court of Missouri in *In re Caranchini*, 956 S.W.2d 910 (Mo. 1997) (en banc), cert. denied, 524 U.S. 940, 118 S. Ct. 2347, 141 L. Ed. 2d 717 (1998). Sitting en banc, that court held that "[a] claim is not frivolous merely because the facts have not first been fully substantiated. . . . However, continuing to pursue a claim once it becomes apparent that there is no factual basis to support that claim is clearly contrary to the requirements of the rule." (Citation omitted; internal quotation marks omitted.) Id., 916. The court concluded, stating that "[b]y pursuing [the client's] slander claim even after it became apparent that there was no factual basis for that claim, [the attorney] violated [Missouri's version of rule 3.1]." Id.; see also Lawyers Manual on Professional Conduct, § 61-106 ("even if a claim or contention was not frivolous at the outset, the lawyer may not stick to that position once it becomes apparent that there is no factual basis for it"). The Supreme Court of Indiana reached a similar result in *Kahn* v. *Cundiff*, 543 N.E.2d 627 (Ind. 1989). It stated: "Commencing an action against a particular party will less often be frivolous,

---

[17] We note that rule 3.1 is titled "Meritorious Claims and Contentions," not "Meritorious Pleadings."

unreasonable, or groundless than continuing to litigate the same action. Because of the system of notice pleading and pre-trial discovery, commencement of an action may often be justified on relatively insubstantial grounds. Thorough representation will sometimes require a lawyer to proceed against some parties solely for the purpose of investigation through pre-trial discovery. In such cases, counsel is expected to determine expeditiously the propriety of continuing such action and to dismiss promptly claims found to be frivolous, unreasonable, or groundless." Id., 629. Accordingly, we conclude that rule 3.1 prohibits an attorney from asserting at any time a claim on which the attorney reasonably is unable to maintain a good faith argument on the merits.

The present case involves such a situation. At the hearing on the plaintiff's motion to vacate, Sulzbach testified that the one and one-half hour conference noted in McManus' affidavit never occurred. Even more significantly, the plaintiff represented to the court that he was *not* alleging that the conference occurred. That admission is remarkable. If it was undisputed at the hearing that the alleged one and one-half hour conference between McManus and Sulzbach never transpired, it defies logic to nevertheless maintain that an affidavit referencing that conference evinces partiality or corruption on the part of an arbitrator. Without any other evidence, a reasonable attorney would not have persisted with an allegation of partiality or corruption. Indeed, a critical variable in the frivolousness calculus is the evidentiary support of a given allegation. In *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 210, the court concluded that certain claims were frivolous "because they were not supported by a scintilla of evidence . . . ." (Internal quotation marks omitted.) Id., 255; see also *Western United Realty, Inc.* v. *Isaacs*, 679 P.2d 1063, 1069 (Colo. 1984) ("a claim or

defense is groundless if the allegations in the complaint
. . . are not supported by any credible evidence at
trial"); *Kahn* v. *Cundiff*, 533 N.E.2d 164, 171 (Ind. App.)
(claim frivolous "if no facts exist which support the
legal claim relied on and presented"), aff'd, 543 N.E.2d
627 (Ind. 1989); cf. *Tautic* v. *Pattillo*, 41 Conn. Sup.
169, 173, 561 A.2d 988 (1988) ("case maintained solely
on the basis of mere speculation is one that is main-
tained in bad faith, and where such a claim is pursued
through time consuming litigation, or never is investi-
gated minimally to determine its merits, a finding of
bad faith is all but mandatory" [internal quotation marks
omitted]). Likewise, rule 11 of the Federal Rules of Civil
Procedure, the federal counterpart to rule 3.1, focuses
on the existence of evidence, providing that "the allega-
tions and other factual contentions have evidentiary
support" or, if identified, the allegations are "likely to
have evidentiary support" after a reasonable opportu-
nity for further investigation or discovery.[18] Fed. R. Civ.
P. 11 (b) (3).

We are mindful that "[a]dministration and interpreta-
tion of prohibitions against frivolous litigation should
be tempered by concern to avoid overenforcement." 2
Restatement (Third), supra, § 110, comment (b), p. 171.
For that reason, "[t]ribunals usually sanction only
extreme abuse." Id. Rule 3.1 should be applied cau-
tiously in light of its potential for chilling legitimate
but difficult advocacy.[19] "Danger exists that courts or

[18] Rule 3.1 and rule 11 use a similar frivolousness standard, and both apply
the standard objectively. J. MacFarlane, supra, 21 J. Legal Prof. 233.

[19] We recognize an attorney's competing responsibilities as advocate of
the client and officer of the court. As one commentator observed, however,
"when [the attorney's] duties to his client conflict with his duties as an
officer of the court to further the administration of justice, the private duty
must yield to the public duty." W. Cann, "Frivolous Lawsuits—the Lawyer's
Duty to Say 'No'," 52 U. Colo. L. Rev. 367, 375 (1981). Our law long has held
that an attorney is "a minister of justice." *Cole* v. *Myers*, 128 Conn. 223, 230,
21 A.2d 396 (1941). As such, "[a]n attorney . . . is responsible for the purity
and fairness of all his dealings in court." *Cunningham* v. *Fair Haven &
Westville R. Co.*, 72 Conn. 244, 252, 43 A. 1047 (1899).

disciplinary authorities might punish as frivolous or dilatory conduct that is the result of simple negligent error that was perceived as deliberate misconduct or deliberate indifference to the circumstances. Punishment should be imposed only if the lawyer *persists* in the error . . . ." (Emphasis in original.) 2 G. Hazard & W. Hodes, supra, § 27.12. It is not that the plaintiff alleged partiality or corruption consistent with § 52-418 in the motion to vacate,[20] but rather that he persisted in that allegation despite having not a scintilla of evidence to support it. For that reason, we agree that the plaintiff lacked a good faith basis to maintain his allegation of evident partiality or corruption on the part of the arbitrators.

B

We next consider the defendant's finding that the plaintiff's allegation of fraud, corruption or undue influence in procuring the arbitration award violated rule 3.1. The plaintiff presented no evidence in support of that allegation at the hearing on the motion to vacate the arbitration award.

The sole basis for the plaintiff's allegation of fraud, corruption or undue influence was an out-of-court statement of his client. As the reviewing committee stated: "In his testimony before this reviewing committee, the [plaintiff] stated that the charges of fraud, corruption or undue influence stemmed from a comment by his client, who claimed to have been told, by a staff person in the office of her former counsel, that the former

_____

We further appreciate the difficulty that may attach to a determination of precisely when a good faith basis no longer exists to maintain a particular claim. At the same time, when it may be said that a reasonable lawyer clearly would not persist in pursuing a claim that lacked any good faith basis, rule 3.1 is implicated. A primary indication of when that point arrives is when the absence of any evidentiary support whatsoever for the claim becomes evident.

[20] See footnote 2 of this opinion.

counsel had received money from [Orsini]. The [plaintiff] stated that he informed his client that he would need an affidavit to support these allegations. The client initially indicated that she would obtain such an affidavit, but never did. The [plaintiff] testified that since he had only thirty days to file the motion to vacate, he decided to include the allegations even without the affidavit. The [plaintiff] subpoenaed the former counsel to the hearing on the motion to vacate, but without an affidavit the [plaintiff] did not go forward on the issue. The [plaintiff] further testified that his client refused to authorize the [plaintiff] to withdraw the allegations."

As in part II A, there is little doubt that the plaintiff possessed a good faith basis to allege fraud, corruption or undue influence in procuring the arbitration in the motion to vacate the arbitration award.[21] In its memorandum of decision, the defendant conceded as much, noting that "the [plaintiff] initially may have had a good faith basis to make the allegation in the motion . . . ." The defendant nevertheless found that the plaintiff "certainly did not have a good faith basis to maintain the allegation before the court once his client refused to supply an affidavit in support of the statement." The dispositive issue, then, is whether it may be said that a reasonable lawyer clearly would have ceased to pursue the fraud, corruption or undue influence allegation at trial when the client refused to provide an affidavit. The answer is yes.

Although the plaintiff initially was entitled to rely on his client's representation that she would furnish an affidavit in alleging fraud, corruption or undue influence in the motion to vacate, his obligation as an officer of the court required him to reconsider that allegation when his client subsequently refused to do so. Without

[21] It is undisputed that the allegations contained in the motion to vacate mirrored the provisions of General Statutes § 52-418 (a).

that affidavit, the allegation was rendered baseless.[22] The plaintiff testified before the reviewing committee that he informed his client that he could not proceed on the allegation without the affidavit. That testimony confirms that the plaintiff, at the time of trial, was aware that he lacked a good faith basis to continue to pursue the allegation.

The plaintiff further testified that his client refused to authorize him to withdraw the allegation.[23] That is no excuse for his continued pursuit of the allegation. The commentary to rule 1.2 (a) of the Rules of Professional Conduct (2002) states in relevant part that "a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so."[24] When an attorney is aware that a good faith basis is lacking, his duty as a minister of justice every time must trump a client's desire to continue an untenable allegation.

At the time of the hearing, the plaintiff's client refused to furnish an affidavit in support of her allegation. As the plaintiff then informed her and later acknowledged

[22] Although the plaintiff was free to subpoena the staff person to substantiate his client's assertion, he did not do so. That decision is perplexing in light of the plaintiff's admission that he could not proceed on the allegation without the staff person's affidavit.

[23] At the hearing before the reviewing committee, the plaintiff was asked why he elected not to withdraw the allegation during the hearing on the motion to vacate. Although he claims in his appellate brief that he "had to protect his client by at least holding the option of filing a motion to open the judgment if, in fact, she was able to receive the affidavit after [the hearing concluded]," the plaintiff did not raise that claim before the reviewing committee.

[24] "[T]he lawyer must not be permitted to say that he is only an advocate, that he is only doing his job. He must not be allowed to simply close his eyes and state that he is not morally or ethically responsible for the bringing of a frivolous suit or for the imposition of unjust expense on another. An action should not be [maintained] simply to gratify the inclination of a litigious person." (Internal quotation marks omitted.) W. Cann, "Frivolous Lawsuits—the Lawyer's Duty to Say 'No'," 52 U. Colo. L. Rev. 367, 375 (1981).

in his testimony before the reviewing committee, he knew he could not reasonably proceed on the allegation that the arbitration award was procured by corruption, fraud or undue means without that affidavit. At that juncture, his conduct in continuing the allegation ran afoul of the stricture of rule 3.1.

## III

### CONCLUSION

The record before us contains ample support for the defendant's finding that the plaintiff violated rule 3.1 by persisting in the allegations that the arbitration award was procured by corruption, fraud or undue means and that evident partiality or corruption on the part of an arbitrator or arbitrators existed once he knew that he had no evidence to support those allegations at trial. Moreover, we are not left with a definite and firm conviction that a mistake has been made. We therefore conclude that the defendant's finding that the plaintiff violated rule 3.1 is not clearly erroneous.

The judgment is affirmed.

In this opinion McLACHLAN, J., concurred.

FLYNN, C. J., concurring. I respectfully concur in the result reached, but write separately because I do not concur with some of the reasoning of the grievance panel or of the trial court that heard the motion to vacate the arbitration award and, instead, would affirm on a narrower ground.

This case stems from a motion to vacate an arbitration award following a serious allegation made to the client of the plaintiff, Max F. Brunswick. The plaintiff testified before the reviewing committee of the defendant, the statewide grievance committee, that the allegation in his motion to vacate, which stated, inter alia,

that the award was procured by corruption, fraud or undue means, was based on information provided to him by his client. The plaintiff testified that his client, the defendant in the underlying arbitration proceeding, had advised him that a secretary in her predecessor attorney's office had told her that her former attorney had received money from the arbitration plaintiff in the arbitration proceeding. The secretary, who allegedly provided this information, left that employment and left the state, and, therefore, could not be found to testify or furnish an affidavit requested by the plaintiff to support the allegation. The plaintiff's client also was concerned about a fee bill from Vincent McManus, Jr., the attorney for the arbitration plaintiff, that reflected a one and one-half hour conference with the arbitrator selected by the arbitration plaintiff that purportedly had occurred prior to the commencement of evidence in the arbitration. Although the amount and the time billed was related to requesting the arbitrator to sit on the case, it was argued that the one and one-half hours billed far exceeded the reasonable time such request would require, thereby suggesting an inference that the merits of the case may have been discussed.[1]

Jurisdictionally, the plaintiff had only thirty days within which to move to set aside the arbitration award. See General Statutes § 52-420 (b);[2] see also *Wu* v. *Chang*, 264 Conn. 307, 312, 823 A.2d 1197 (2003) (if motion to vacate arbitration award not filed within thirty day time limit, court does not have subject matter jurisdiction over motion); *Middlesex Ins. Co.* v. *Castellano*, 225

---

[1] The arbitrator selected by the arbitration plaintiff testified at the hearing on the motion to vacate the arbitration award that he did not have a one and one-half hour conversation with McManus before the arbitration proceedings began.

[2] General Statutes § 52-420 (b) provides that "[n]o motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

Conn. 339, 344, 623 A.2d 55 (1993) (same). The practicing lawyer must file the motion to vacate within the very short time window of § 52-420 (b) or his client's motion will be barred.

I agree with the majority's conclusion in part II A, that attorneys in Connecticut are not required, at the time a pleading is filed, to substantiate fully the allegations contained therein with evidentiary support. However, I would go further and hold that it was not improper and did not violate rule 3.1 of the Rules of Professional Conduct for the plaintiff to track the language of the provisions of General Statutes § 52-418 (a) in the allegations contained in the motion to vacate. In denying the motion to vacate, the court seemed concerned that the plaintiff tracked the language of the entire statute, § 52-418, including corruption, fraud, undue means, partiality or corruption, the arbitrator's refusal to postpone or hear evidence and the exceeding of powers or the imperfect execution of them. This is not improper and has been the common practice of lawyers, who understand that they cannot later prove what they have not pleaded. I disagree with the holding of the reviewing committee that the allegation of fraud, corruption or undue influence was "clearly frivolous . . . ." The commentary to rule 3.1 provides that "[t]he filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery." Additionally, plaintiffs are permitted to plead inconsistent yet otherwise valid causes of actions together in the same complaint, thereby allowing plaintiffs to pursue alternative remedies or theories of relief. See Practice Book § 10-25; *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 245, 492 A.2d 164 (1985); *Veits* v. *Hartford*, 134 Conn. 428, 433–34, 58 A.2d 389 (1948). I do not consider pleading in the alternative to be "frivolous."

I next address part II B of the majority opinion, which concerns the plaintiff's continued pursuit of the allegations contained within the motion to vacate when his client could not supply the affidavit he requested. The defendant found that the plaintiff certainly did not have a good faith basis to maintain the allegation before the court once his client refused to supply an affidavit in support of the statement. I disagree. I find nothing in the record to support the finding that the client refused to supply such an affidavit. Instead, the evidence was that the plaintiff's client would attempt to obtain an affidavit from her prior attorney's former secretary who had personal knowledge but had left the state. An attorney, in pursuing a claim under § 52-418 (a) to vacate an arbitration award due to fraud, corruption or undue influence, would not need to obtain an affidavit from his or her client before bringing an action at law or proceeding to trial. If the legislature had intended to require that such an affidavit be sworn to by the movant seeking to vacate an arbitration award, it knew how to enact such a requirement.[3] There is no affidavit requirement to be found in the General Statutes or in the rules of practice.

In the broader picture, imposing an affidavit requirement in like instances would change the practice of law. For example, there are many situations in which

[3] See, e.g., General Statutes § 52-190a (requires good faith certificate to be filed with complaint or initial pleading in medical malpractice action); General Statutes § 52-278c (a) (2) (requires individuals seeking prejudgment remedy to include affidavit along with unsigned writ of summons and complaint and application); General Statutes § 52-471 (b) (no injunction may be issued unless facts stated in application are verified by oath of plaintiff or some competent witness); see also *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 770–71 n.17, 900 A.2d 1 (2006) (noting that legislature knows how to enact legislation consistent with its intent). Judges of the Superior Court, as rule makers also can impose affidavit requirements but did not do so in this instance. See, e.g., Practice Book § 1-23 (motion to disqualify judicial authority shall be in writing and accompanied by affidavit).

attorneys commence proceedings without corroborating proof of a client's allegations. See, e.g., *State* v. *Dabkowski*, 199 Conn. 193, 200, 506 A.2d 118 (1986) (in 1974, legislature repealed General Statutes § 53a-68, thereby eliminating requirement of corroboration to sustain conviction in particular sexual offenses); *Dombrowski* v. *Dombrowski*, 169 Conn. 85, 87–88, 362 A.2d 907 (1975) ("[w]hen there is evidence which is believed by the court, which is sufficient to establish intolerable cruelty, a party is not precluded from a judgment dissolving the marriage because the evidence lacks corroboration"). To require verified complaints, supporting affidavits or corroborative evidence to bring or to pursue a claim in instances where there is no such requirement imposed by rule or statute, would deprive certain persons of access to Connecticut courts. This would be contrary to the letter and spirit of article first, § 10, of the constitution of Connecticut, which provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

The plaintiff's testimony before the reviewing committee indicated that he told his client that he would need an affidavit to support the client's allegations of fraud, corruption or undue influence. The plaintiff discussed obtaining an affidavit, but one was not required by law in order to bring the motion to vacate. Because such an affidavit was neither required by statute or rule, it became a red herring in this disciplinary proceeding.

I, nevertheless, would affirm the judgment on a more narrow ground. During the December 4, 2003 hearing before the reviewing committee, the plaintiff conceded that his client had advised him at one point that she did not want to go forward with the charges underlying the motion to vacate at the hearing "because she didn't have any proof to back it up." At that point, the plaintiff

no longer was faced with a situation in which a necessary witness for his client had left the state and the client wanted to continue to move to vacate. At that juncture, the plaintiff no longer had potentially diverging responsibilities as an advocate for his client and as an officer of the court. Rather, he had an obligation to his client not to proceed with a claim that she did not want to continue to be brought, and he had an obligation to the court under rule 3.1 not to continue to argue the motion to vacate when his client believed she could not get the proof needed to support her allegations. His continuing to proceed, despite his client's desire not to go forward, supports the affirmance of the judgment of the trial court.

Accordingly, I concur in the result.