D'AURIA, J.
**728 *1175 In this certified appeal, we consider whether the attorney for the petitioner, Jennifer Helmedach, rendered ineffective assistance when, during trial, he delayed presenting to the petitioner a favorable plea offer from the prosecutor, an offer the prosecutor later withdrew before it could be accepted. We agree with the habeas court and Appellate Court that counsel's delay amounted to deficient performance pursuant to Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984), and, in light of the fact that the respondent, the Commissioner of Correction, does not contest that the petitioner was prejudiced, we therefore affirm the Appellate Court's judgment.
**729 I
The following facts, as found by the habeas court, and procedural history are relevant to this appeal. The charges in this case stem from the murder of Faye Bennett. The state alleged that the petitioner had helped her romantic partner, David Bell, lure the victim to an apartment in Meriden where Bell robbed and murdered her. The state further alleged that the petitioner helped Bell flee the scene in the victim's vehicle. They were later apprehended in New York.
The state charged the petitioner with felony murder, robbery in the first degree, and conspiracy to commit robbery in the third degree.[1] The trial court appointed Richard Reeve to represent the petitioner. The petitioner denied participating in the crime or having prior knowledge of Bell's intention to rob or to murder the victim, and she claimed that she fled with him under duress.
The petitioner and prosecutor discussed the possibility of disposing of the case pursuant to a plea agreement. During a pretrial conference, the prosecutor offered to agree to a sentence of fifteen to twenty years incarceration in exchange for a guilty plea on the charge of robbery or conspiracy to commit robbery, thus having the petitioner avoid the twenty-five year mandatory minimum sentence for felony murder. Reeve stated that he would discuss the offer with the petitioner, and the prosecutor indicated his intention to review the offer with the victim's family. Reeve later replied to the prosecutor that the petitioner wanted to accept the offer, but the prosecutor withdrew the offer because the victim's family opposed it. The petitioner moved the trial court to enforce specific performance of that plea agreement, but the trial court denied the motion.
**730 The case proceeded to trial. During jury selection, the prosecutor made a second offer of twenty-two years incarceration, *1176 execution suspended after seventeen years, which the petitioner declined. The prosecutor made a third offer, near the start of the trial, of fourteen years to serve, which the petitioner once again rejected. The petitioner rejected the second and third offers because the state's case had been weakened when a critical witness recanted an earlier oral statement to the police establishing that the petitioner had spoken to that witness about helping to arrange for the robbery of the victim. The witness' testimony was the only evidence the state had to directly tie the petitioner to the robbery.
The prosecutor made a fourth and final plea offer after resting the state's case. The state rested its case on a Friday, and the trial was set to resume with the defense's case on the following Tuesday. Reeve spent substantial time during the weekend with the petitioner, who was incarcerated pending trial, preparing her for her anticipated testimony. On Tuesday morning, the day the petitioner was expected to take the stand, the prosecutor called Reeve and offered a plea agreement of ten years to serve. Reeve thought the offer was "a great offer" for his client, but he was concerned about relaying it to her right before her testimony. According to the habeas court, Reeve thought that because the petitioner was young and "flustered" about testifying, hearing the offer would negatively impact her testimony. Reeve asked the prosecutor if he could convey the offer to the petitioner after she testified, and the prosecutor replied " 'that's okay.' "
On his way to court, Reeve discussed the offer with his law partner. His partner agreed that the offer of ten years was favorable and advised Reeve not to delay in telling the petitioner about the offer. Because the prosecutor had indicated he would leave the offer open, **731 however, the habeas court found that Reeve decided to follow "his instincts" and wait to tell her.
Reeve presented the offer to his client, but he had waited to do so until after her testimony concluded two and one-half days later. The petitioner indicated that she wanted to accept it but first wanted to discuss it with her mother and Reeve together. Reeve then informed the prosecutor that his client was interested in accepting the offer. The prosecutor, however, responded that the offer was withdrawn. Reeve did not attempt to specifically enforce that plea agreement.
The trial proceeded and, after the close of evidence, the jury returned a verdict of guilty as to all charges. The trial court rendered judgment of conviction according to the verdict and sentenced the petitioner to thirty-five years incarceration.
The petitioner later filed this habeas action, alleging, among other things, that Reeve rendered ineffective assistance under the sixth amendment to the United States constitution as a result of his delay in informing the petitioner of the plea offer until after her testimony, which ultimately led the prosecutor to withdraw it before it could be accepted. According to the petitioner, Reeve had a duty to promptly inform her of the prosecutor's offer, irrespective of his thoughts about the potential impact to her emotional state in advance of her testimony. The petitioner asserted that Reeve's delay in presenting the offer to her, despite having the opportunity to present and to discuss it with her before her testimony, breached this duty and caused her prejudice because she would have accepted the offer.
The habeas court agreed with the petitioner. It determined that "Reeve's failure to relay the favorable offer in a timely manner before it was withdrawn fell below the objective standard of reasonableness required by attorneys under the state and *1177 federal constitutions." **732 The court further found that the petitioner was prejudiced by Reeve's deficient performance because, had the offer been presented sooner, the petitioner would have accepted the offer, and the trial court would have agreed to sentence the petitioner accordingly. The habeas court then ordered that the matter be returned to the criminal trial docket for a determination of the appropriate remedy. See Ebron v. Commissioner of Correction , 307 Conn. 342, 361-62, 53 A.3d 983 (2012), cert. denied sub nom. Arnone v. Ebron , 569 U.S. 913, 133 S.Ct. 1726, 185 L.Ed.2d 802 (2013).
The habeas court granted permission for the respondent to appeal from the judgment to the Appellate Court, which affirmed. Helmedach v. Commissioner of Correction , 168 Conn. App. 439, 441, 148 A.3d 1105 (2016). We granted the respondent's petition for certification to appeal.[2] Helmedach v. Commissioner of Correction , 323 Conn. 941, 151 A.3d 845 (2016). Although, on appeal, we will defer to the habeas court's factual findings and not disturb them unless they are clearly erroneous, we review de novo whether the facts found by the habeas court establish ineffective assistance of counsel. Gaines v. Commissioner of Correction , 306 Conn. 664, 677, 51 A.3d 948 (2012).
II
The sixth and fourteenth amendments to the United States constitution guarantee criminal defendants the right to have counsel for their defense in state prosecutions. Strickland v. Washington , supra, 466 U.S. at 668, 104 S.Ct. 2052;
**733 Horn v. Commissioner of Correction , 321 Conn. 767, 775, 138 A.3d 908 (2016). Implicit in this guarantee is the right to have effective assistance of counsel. Strickland v. Washington , supra, at 686, 104 S.Ct. 2052.
A defendant seeking habeas relief for ineffective representation must prove two elements. "First, the defendant must show that counsel's performance was deficient. This requires [a] showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the [s]ixth [a]mendment. Second, the defendant must show that the deficient performance prejudiced the defense." (Internal quotation marks omitted.) Williams v. Taylor , 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000), quoting Strickland v. Washington , supra, 466 U.S. at 687, 104 S.Ct. 2052.
The parties in the present case agree that the delay in conveying the offer to the petitioner caused the petitioner prejudice in light of the habeas court's findings that the petitioner would have agreed to the offer for a ten year sentence of incarceration, had the offer been presented to the petitioner before her testimony, and that the court would have accepted it. Because the parties do not contest whether counsel's performance harmed the petitioner, or whether the habeas court ordered the appropriate remedy, the only issue presented for our resolution is whether counsel's delay amounted to constitutionally deficient representation.
*1178 A
The defendant's right to effective representation applies to all "critical stages" of a criminal prosecution, which extends to any plea negotiations. (Internal quotation marks omitted.) Missouri v. Frye , 566 U.S. 134, 140, 132 S.Ct. 1399, 182 L.Ed. 2d 379 (2012). "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the [s]ixth [a]mendment right to effective assistance of counsel."
**734 Padilla v. Kentucky , 559 U.S. 356, 373, 130 S.Ct. 1473, 176 L.Ed. 2d 284 (2010). After all, guilty pleas account for about ninety-four percent of all convictions in state prosecutions. Missouri v. Frye , supra, at 143, 132 S.Ct. 1399 (citing federal Department of Justice statistics); see Padilla v. Kentucky , supra, at 372, 130 S.Ct. 1473. This statistic has led the United States Supreme Court to observe, quoting scholars, that, "[t]o a large extent ... horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it is the criminal justice system." (Emphasis in original; internal quotation marks omitted.) Missouri v. Frye , supra, at 144, 132 S.Ct. 1399, quoting R. Scott & W. Stuntz, " Plea Bargaining as Contract," 101 Yale L.J. 1909, 1912 (1992). Plea bargaining holds benefits for both the state and the defendant-it allows the state to "conserve valuable prosecutorial resources" while providing defendants a chance to obtain "more favorable terms at sentencing ...." Missouri v. Frye , supra, at 144, 132 S.Ct. 1399. "In order that these benefits can be realized, however, criminal defendants require effective counsel during plea negotiations." Id.
Precisely defining counsel's duties during plea negotiations is, however, a difficult task. "The art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions farther removed from immediate judicial supervision .... The alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." (Citation omitted; internal quotation marks omitted.) Id., at 144-45, 132 S.Ct. 1399. The court in Strickland itself acknowledged that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent **735 a criminal defendant." Strickland v. Washington , supra, 466 U.S. at 688-89, 104 S.Ct. 2052.
Nevertheless, despite the unstructured nature of plea bargaining, the United States Supreme Court has determined that counsel at least has a duty to present to the defendant any plea offer received from the prosecution. In Missouri v. Frye , supra, 566 U.S. at 138-39, 132 S.Ct. 1399, the defendant's attorney received two formal plea offers from the prosecutor but did not relay those offers to the defendant, and the offers later expired without the defendant ever being made aware of them. Id., at 138-39, 132 S.Ct. 1399. Although the court declined to set forth specific rules governing plea bargaining, it held that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Id., at 145, 132 S.Ct. 1399. The court also concluded that, "[w]hen defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the [c]onstitution requires." Id.
*1179 Although Frye specifically addressed only whether defense counsel must relay offers received, not when they must be relayed, the court's rationale in Frye strongly suggests that counsel must relay offers to plea bargain promptly , according to the circumstances of the case. The court in Frye reached its holding by looking to professional codes of conduct from the American Bar Association and various state bars. The court observed that, although counsel's obligations are not defined "solely by reference to codified standards of professional practice, these standards can be important guides." Id., at 145, 132 S.Ct. 1399. The court began by looking to the American Bar Association Standards for Criminal Justice, which provide that defense counsel "should keep the defendant advised of developments arising out of plea discussions conducted with the prosecuting **736 attorney, and should promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney." (Emphasis added.) A.B.A., Standards for Criminal Justice: Pleas of Guilty (3d Ed. 1999) standard 14-3.2 (a), p. 116. The court then explained that "numerous state and federal courts over the last [thirty] years" had adopted that standard. Missouri v. Frye , supra, 566 U.S. at 145-46, 132 S.Ct. 1399 (citing cases). In addition, the court observed that "[t]he standard for prompt communication and consultation is also set out in state bar professional standards for attorneys." (Emphasis added.) Id., at 146, 132 S.Ct. 1399 (citing rules of professional conduct from several states).
As the Appellate Court observed in the present case, the duty of prompt communication with a client permeates our own Rules of Professional Conduct, including, specifically, prompt communication with a client to determine how to plead in a criminal matter, which is a decision the client is entitled to make. See Helmedach v. Commissioner of Correction , supra, 168 Conn. App. at 458-59, 148 A.3d 1105 (surveying relevant provisions in Rules of Professional Conduct). Most notably, rule 1.3 of the Rules of Professional Conduct requires the lawyer to "act with reasonable diligence and promptness in representing a client." Rule 1.4 more specifically requires an attorney to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent ... is required by these Rules ...." Rules of Professional Conduct 1.4(a)(1). And rule 1.2 (a) of the Rules of Professional Conduct requires the client's informed consent for the entry of a plea, explaining that a lawyer must "abide by a client's decision whether to settle a matter" and, specifically in the criminal context, that "the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive [a] jury trial and whether the client will testify." Rule 1.4 also requires the lawyer **737 to "keep the client reasonably informed about the status of the matter ...." Rules of Professional Conduct 1.4(a)(3). According to the commentary to that rule, this includes keeping the client informed about "significant developments affecting the timing or the substance of the representation." Rules of Professional Conduct 1.4(a)(3), commentary.
Although these rules are not dispositive in setting forth counsel's duty of effective representation, we find their command of promptness to be a compelling and appropriate standard for measuring the constitutional adequacy of defense counsel's performance in this context. The defendant, not defense counsel, holds the ultimate decision-making power on whether to resolve his or her criminal case through a plea agreement rather than a trial. Rules of Professional Conduct 1.2(a) ;
*1180 see also Jones v. Barnes , 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed. 2d 987 (1983) ("[i]t is also recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury [trial], testify in his or her own behalf, or take an appeal"). The defendant, alone, as the party with the constitutional right to a trial by jury, may waive this right and choose to enter a guilty plea. Rules of Professional Conduct 1.2(a) ; see also Jones v. Barnes , supra, at 751, 103 S.Ct. 3308. A defendant's authority to decide whether to settle the case logically also must extend to deciding when to settle it. And the defendant's authority to decide whether and when to settle cannot meaningfully be exercised unless and until the defendant is made aware of the existence of any plea offers. Unjustified delay in alerting the defendant to the existence of a plea offer thus interferes with a defendant's exercise of his rights.[3]
**738 We therefore conclude that counsel's duty to convey to the defendant all formal offers from the prosecutor to resolve the case through a plea agreement also includes a duty to promptly convey an offer to the defendant. We acknowledge that a defendant does not have a right to receive a plea offer from the state in the first place or to have a guilty plea accepted by the court. Weatherford v. Bursey , 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed. 2d 30 (1977) ; North Carolina v. Alford , 400 U.S. 25, 38 n.11, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970). But when the prosecutor chooses to extend to the defendant an offer to accept a plea of guilty on terms favorable to the defendant, the sixth amendment's guarantee of the effective assistance of counsel during any plea negotiations requires that the defendant's counsel promptly communicate that offer to the defendant.
Of course, what is prompt does not depend on any rigid time frame but, instead, depends on what is reasonable in the context and according to the circumstances of the case. Webster's Third New International Dictionary (1961) p. 1816, defines "prompt," when used as an adjective, as "ready and quick to act as occasion demands ...."[4] (Emphasis added.) This meaning is consistent with cases referencing the common meaning of the term "promptly." See, e.g., Rierson v. State , 188 Mont. 522, 526, 614 P.2d 1020 (1980) (" 'Promptly' is a **739 common word with a plain and well known meaning. That meaning is ready and quick to act, depending on the circumstances."), on rehearing, 191 Mont. 66, 622 P.2d 195 (1981). And cases acknowledge that what qualifies as prompt often depends on the circumstances, not a fixed time frame. See, e.g., Irvin v. Koehler , 230 F. 795, 797 (2d Cir. 1916) *1181 ("Promptly does not have any exact definition that can be regulated with respect to a period of time. It depends, of course, in its definition largely on the circumstances surrounding the facts which are adduced in each case ...."); see also Black's Law Dictionary (6th Ed. 1990) p. 1214 (defining "[p]romptly" as "ready and quick to act as occasion demands" and explaining "[t]he meaning of the word depends largely on the facts in each case, for what is 'prompt' in one situation may not be considered such under other circumstances or conditions").
The speed with which counsel reasonably may convey an offer will, therefore, depend on the circumstances and the context of the case when the offer is made. A particular delay in conveying an offer to enter into a plea agreement that might be justified if the offer is made during pretrial proceedings, when no developments are reasonably expected, might not be justified if the same offer is made at trial, on the eve of the jury's commencement of deliberations.
B
In the present case, we have no occasion to delve more precisely into the meaning of prompt communication than the circumstances here demand. Under these circumstances, Reeve had a duty to convey the prosecutor's fourth offer to the petitioner, and he should have conveyed it before she began her testimony. Reeve's failure to do so rendered his assistance ineffective under the sixth amendment.
**740 A defendant is entitled to decide whether to testify in his or her own case and is further entitled to have advice from counsel concerning that decision. See Jones v. Barnes , supra, 463 U.S. at 751, 103 S.Ct. 3308 (defendant's decision-making authority extends to whether to "testify in his or her own behalf"); see also Rules of Professional Conduct 1.2 (a) (decision on whether to testify lies with client, in consultation with lawyer). Counsel's duty to advise includes the duty to keep the defendant informed of all developments in the case material to the defendant's decision to testify.[5] See Lewis v. Commissioner of Correction , 89 Conn. App. 850, 870, 877 A.2d 11 ("[i]t is axiomatic that [i]t is the right of every criminal defendant to testify on his own behalf ... and to make that decision after full consultation with trial counsel" [citation omitted; internal quotation marks omitted] ), cert. denied, 275 Conn. 905, 882 A.2d 672 (2005). Deciding whether to testify on one's own behalf is often among the most difficult choices a criminal defendant must make during trial. Testifying can present a risky and difficult ordeal for a defendant. Defense counsel therefore must keep the defendant apprised of all material information *1182 known to counsel in order to help the defendant in making that decision. **741 In the present case, Reeve's failure to convey the offer to the petitioner before she took the stand amounted to deficient performance. The knowledge that the prosecutor had offered to resolve the case with a plea agreement of ten years incarceration could have impacted the petitioner's decision whether to testify, and she had a right to learn of that offer sooner than it was given to her. The failure to convey the offer to the petitioner before she took the stand left her unaware that the prosecutor had made an offer to resolve the case on terms more favorable to her than any prior offer. Reeve's decision to nevertheless delay in communicating that offer therefore interfered with the petitioner's decision about whether to testify by preventing her from making an informed choice. There is no indication that Reeve was prevented from conveying the offer before the petitioner's testimony. Because the offer came during trial, Reeve would have seen the petitioner shortly after receiving the offer and, thus, would have had the opportunity to speak with his client on the morning she was to begin her testimony. If Reeve thought he would have needed additional time to discuss with his client the offer and its potential effect on her decision whether to testify, he could have sought additional time from the court. He did not. Reeve instead decided not to tell the petitioner at all and waited two and one-half days-until the petitioner finished her testimony-to convey to her the prosecutor's favorable offer. True, Reeve had asked the prosecutor whether he could wait until after the petitioner's testimony to communicate the offer, and the prosecutor responded, " 'that's okay,' " which Reeve understood as a promise to keep the offer open until that time. But Reeve's choice to delay was nevertheless unreasonable because it interfered with the petitioner's ability to exercise her right to knowingly decide, on the basis of all material information available, whether to testify. **742 C
The respondent agrees that "[t]here is no question that criminal defense attorneys have an obligation to promptly communicate formal plea offers to their clients" but, nevertheless, asserts that Reeve "promptly conveyed the [prosecutor's] plea offer to the petitioner because he presented it to her and conveyed her acceptance to the [prosecutor] before the offer expired." Relying on Frye , the respondent contends that presenting the offer to the client before its expiration "is all that the sixth amendment requires."
But Frye does not establish that to timely convey an offer counsel need only convey it to the defendant sometime before its expiration. Frye held only that the failure to convey an offer at all violated the sixth amendment's right to the effective assistance of counsel. Missouri v. Frye , supra, 566 U.S. at 145, 132 S.Ct. 1399. The court stated that "[a]s a result of that deficient performance, the offers lapsed." Id., at 147, 132 S.Ct. 1399. At most, Frye established that conveyance before expiration may be a necessary condition for establishing promptness, but it did not hold that it was sufficient to establish promptness standing on its own.
Rather, the court in Frye relied on guidance from bar associations establishing that offers must be conveyed promptly, but it did not expound on what "promptly" meant in this context and did not need to under the facts of that case. See id., at 145-46, 132 S.Ct. 1399. We have reached that question in the present case, and, as we have already established, the duty of prompt conveyance is not met in all cases *1183 simply by conveying a formal offer before its expiration. Promptness instead may depend on a number of circumstances, beyond just the expiration date of the offer, that can impact the plea bargaining process. In the present case, because the offer was conveyed to Reeve during trial and just before the **743 petitioner decided whether to testify, we have concluded that Reeve had a duty to convey the offer to the petitioner before her testimony. This was necessary to fulfill his duty of timely providing the petitioner information relevant to a decision that required her informed consent, specifically, her decision to testify.
The respondent further argues, however, that Reeve was reasonably concerned about the effect that the offer might have on the petitioner's testimony, given her anxious emotional state, and that waiting to tell her until after she testified was a reasonable way to ensure that the offer did not interfere with her performance, thus maximizing the strength of the defense's case. The respondent asserts that Reeve's reason for delay can be justified because the prosecutor had signaled he was amenable to keeping the offer open, allowing Reeve to first see how the petitioner performed on the witness stand and to size up her chances of an acquittal before deciding whether to accept the offer. "In essence," according to the respondent, "Reeve believed that his client could have the best of both worlds if he waited to convey the [prosecutor's] ten year plea offer to her because the [prosecutor] had agreed to leave the offer open until after the petitioner testified." Accordingly, the respondent argues that we must defer to counsel's reasonable strategic decision to delay conveying the offer. See Strickland v. Washington , supra, 466 U.S. at 689, 104 S.Ct. 2052. We disagree.
First, delaying the conveyance of the offer so Reeve could assess the petitioner's performance on the stand was not a decision Reeve was at liberty to make under these circumstances. Although this perhaps could be a reason for advising the petitioner to delay accepting the offer, it does not justify the delay in telling the petitioner in the first place. If this was Reeve's strategy, he should have told the petitioner of the offer and then advised her to wait. It then would have been the petitioner's decision how to proceed. But by deciding to **744 delay telling her at all, Reeve usurped her right to decide whether and when to enter into a plea agreement and end the case, and, also, he failed to fully inform her of the circumstances of the case before she made her decision to testify. A defendant seeming "flustered" or "anxious" before taking the stand in her own defense is hardly an uncommon occurrence and does not justify burdening that defendant's right to make critical decisions concerning her defense. Indeed, if the petitioner were anxious about testifying, she might well have decided to accept the favorable offer rather than pro-long the trial and endure giving testimony. That was her choice to make-not her counsel's.
Second, even if we assume that Reeve's concerns about the offer's impact on the petitioner's testimony could justify an exception to his duty to convey the offer sooner, we would nevertheless conclude that Reeve failed to take adequate steps to protect his client by firming up the prosecutor's offer-the most favorable offer to date-and extracting a formal agreement to keep it open until after the petitioner's testimony. That is something that could have been done with the aid of the court and on the record to protect the petitioner. To be sure, defense counsel often relies on a prosecutor's promise to keep an offer open. But in the present case, the prosecutor's response of " 'that's okay' "-which Reeve took as a suggestion that he could wait to discuss the offer with the petitioner-was vague at best. And the offer came *1184 during trial, just before the petitioner's testimony-a significant event with uncertain consequences. Depending on how the testimony proceeded, the parties' bargaining positions could have changed dramatically, leaving doubt about the viability of the offer. Even if Reeve's concerns about the petitioner's anxiety before her testimony could justify not telling her of the offer just before she took the stand, Reeve nevertheless had the opportunity to inform her of the offer later in the day, after she finished her **745 first day of testimony, when he would have had additional time to discuss the offer and her anxiety might have dissipated to some degree. Additionally, the prosecutor had already withdrawn an earlier offer, despite the petitioner's attempt to accept it. Even if Reeve's concerns about his client's anxiety could justify a delay, his reliance on the prosecutor's vague response, without taking any other steps to protect his client and preserve the offer pending her testimony, thus was not reasonable. Put simply, Reeve's concerns, even if valid, would not justify a two and one-half day delay in conveying the prosecutor's offer to the petitioner without more significant assurances that the offer would remain open despite any developments in the matter during her testimony.[6]
For these reasons, the habeas court and Appellate Court properly determined that Reeve's performance fell below the minimum required for effective assistance under the circumstances.
The judgment is affirmed.
In this opinion the other justices concurred.

The specific charges were felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134(a)(1), and conspiracy to commit robbery in the third degree in violation of General Statutes §§ 53a-48 and 53a-136.

We granted certification specifically on the following questions: "[1] Did the Appellate Court properly conclude that [Reeve's] strategic decision to delay informing the petitioner of a midtrial plea offer was not within the realm of strategic decisions that an attorney is allowed to make?
"[2] If the answer to question one is 'no,' did the Appellate Court properly conclude that [Reeve's] strategic decision was not reasonable?" Helmedach v. Commissioner of Correction , 323 Conn. 941, 941-42, 151 A.3d 845 (2016).

In addition, the circumstances of a case may change after an offer is made, especially during trial. New evidence may be discovered, and witnesses may alter their statements or may perform better or worse than expected when testifying. Changes of this nature will naturally affect the relative bargaining power of the parties and may lead to the retraction of an offer before it is accepted. A delay in conveying the offer, therefore, may result in its lapse because of a changed circumstance, even if defense counsel expected the offer to remain valid for a longer period.

Although the dictionary definition also contains other meanings suggesting immediacy-"performed readily or immediately," and "given without delay or hesitation"-we do not believe the standard of reasonably competent representation requires the immediate transmittal of all plea offers. Webster's Third New International Dictionary (1961) p. 1816. This may, in fact, not be practicable in some circumstances. Instead, we are persuaded that the definition most applicable to the present context is the reference to action "as occasion demands." Id. The context and the circumstances of the case, not timing, should drive what may be considered prompt.

Once again, the Rules of Professional Conduct further elucidate counsel's responsibilities in this regard. As we previously have explained, rule 1.4(a)(1) of the Rules of Professional Conduct requires the attorney to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0 (f), is required by these Rules ...." The commentary to rule 1.4 directs the reader to "[s]ee Rule 1.2(a)" for the decisions requiring a client's informed consent. Rules of Professional Conduct 1.4, commentary. Rule 1.2(a) includes among those decisions the client's right to decide "after consultation with the lawyer ... whether the client will testify." Rules of Professional Conduct 1.2(a). And rule 1.0(f) of the Rules of Professional Conduct defines "[i]nformed consent" as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct ." (Emphasis added.)

Whether the prosecutor may withdraw an offer despite a promise to keep it open and whether the petitioner could have specifically enforced the prosecutor's promise are questions that are not before us in this appeal.