******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEBRA B. MARINO *v.* STATEWIDE
GRIEVANCE COMMITTEE
(AC 40274)

Alvord, Prescott and Eveleigh, Js.

*Syllabus*

The plaintiff attorney appealed to the trial court from the decision of the
reviewing committee of the defendant, the Statewide Grievance Commit-
tee, imposing sanctions on the plaintiff for violating rule 4.4 (a) of the
Rules of Professional Conduct. The plaintiff had represented the former
husband of the complainant, M, in connection with postjudgment marital
dissolution proceedings. After a marshal served a subpoena duces tecum
on M with respect to a noticed deposition, M, who had filed an appear-
ance as a self-represented party, informed the plaintiff that she would
not be attending the deposition. Subsequently, the plaintiff commenced
the deposition for the purpose of noting on the record that M had failed
to appear, and she thereafter prepared and filed a motion for a capias,
in which she represented that M failed to appear for the deposition and
that no motion to quash or for a protective order had been filed. The
day before the scheduled deposition, however, M had filed a motion for
a protective order requesting that the court issue an order preventing
the deposition from taking place. M subsequently filed a grievance
against the plaintiff. The reviewing committee for the defendant found,
by clear and convincing evidence, that the plaintiff violated rule 4.4 (a)
of the Rules of Professional Conduct by engaging in unethical conduct
in filing the motion for a capias, which the committee found had no
substantial purpose other than to embarrass or burden M. After the
defendant affirmed the decision of the reviewing committee, the plaintiff
appealed to the trial court, which dismissed the plaintiff's appeal. On
the plaintiff's appeal to this court, *held* that the trial court's decision
that the defendant properly concluded that the plaintiff violated rule
4.4 (a) of the Rules of Professional Conduct was not based on clear
and convincing evidence; the plaintiff, when filing the motion for a
capias, was mistaken when she stated that no objection or motion to
quash had been filed and there was no clear and convincing proof to
the contrary, nor was there clear and convincing proof that she filed the
motion for a capias for no substantial purpose other than to embarrass
or burden M, as the reviewing committee made no factual finding to
support its conclusion to that effect, there was no finding that the
plaintiff was aware that M had filed her objection and motion the day
before the plaintiff filed her motion for a capias, there is no statutory
authority or rule of practice that requires an attorney to contact the
court or to check the judicial website prior to filing a motion for a
capias, which may properly be requested when a party is served with
a subpoena duces tecum and fails to appear for a scheduled deposition,
and although the fact that M was a self-represented party was a factor
in the reviewing committee's determination that the plaintiff had violated
rule 4.4 (a), that rule does not impose additional obligations on an
attorney when dealing with a self-represented party.

Argued December 4, 2018—officially released April 2, 2019

*Procedural History*

Appeal from the decision of the defendant's reviewing
committee imposing sanctions on the plaintiff, brought
to the Superior Court in the judicial district of Hartford,
where the court, *Robaina, J.*, dismissed the plaintiff's
appeal and rendered judgment thereon, from which the
plaintiff appealed to this court. *Reversed*; *judgment
directed.*

*Barbara M. Schellenberg*, with whom, on the brief,
was *David B. Zabel*, for the appellant (plaintiff).

*Leanne M. Larson*, assistant chief disciplinary counsel, with whom, on the brief, was *Beth L. Baldwin*, assistant chief disciplinary counsel, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Debra B. Marino, an attorney, appeals from the judgment of the trial court dismissing her appeal from the sanctions imposed by the reviewing committee of the defendant, the Statewide Grievance Committee, for violating rule 4.4 (a) of the Rules of Professional Conduct.[1] The plaintiff claims that the court improperly upheld the defendant's conclusion that the motion for a capias that she filed while representing a client in a family proceeding had no substantial purpose other than to embarrass or burden the complainant, Melissa Mathison.[2] We agree with the plaintiff and reverse the judgment of the trial court.

The following relevant facts largely are undisputed. The plaintiff represented the complainant's former husband, Jeffrey Samoncik, in connection with postjudment proceedings following the dissolution of the Samonciks' marriage on April 24, 2009. In September, 2013, the complainant filed a motion to modify child support. On March 15, 2015, the complainant filed a self-represented appearance in the matter. A hearing on the complainant's motion for modification was scheduled for August 4, 2015. The discovery process in connection with the complainant's motion for modification had been somewhat prolonged and engendered communications between the plaintiff and the complainant that were sometimes strained. They exchanged a series of e-mails that addressed the issue of conducting a deposition of the complainant prior to the scheduled August hearing.

The plaintiff noticed the complainant's deposition for July 7, 2015. On July 3, 2015, a marshal served a subpoena duces tecum on the complainant with respect to the noticed deposition. That same day, the complainant e-mailed the plaintiff and informed her that she would not be attending the scheduled deposition. The complainant's July 3, 2015 e-mail reads as follows:

"Please find motions that were recently filed by me.

"Please make note that I will be unable to attend a deposition on July 7. My resources are limited for child care costs.

"In regards to the deposition items, 1-8 are erroneous requests as this information has been supplied to your office on more than one occasion and there are no new documents to produce. Items 9-11 are irrelevant requests and have no bearing on this case. I will be filing an objection to your deposition.

"Have a great weekend."

A few minutes later, the plaintiff responded: "You will need to appear. I'm proceeding." The complainant immediately e-mailed the following response: "I will not be attending on the 7th. Proceed as you please."

On July 7, 2015, the plaintiff commenced the deposition for the purpose of noting on the record that the complainant had failed to appear. That same day, the plaintiff prepared and filed a "Postjudgment Motion/ Application for Capias/Civil Arrest Warrant." In her motion, the plaintiff made the representation that the complainant "was duly subpoenaed for a deposition [and] . . . failed to appear for said deposition in violation of a valid subpoena duces tecum and no motion to quash or for protective order was filed." In addition to requesting that the complainant pay for the costs of the subpoena, court reporter, and counsel fees, the plaintiff moved that the complainant "be precluded from proceeding with her motions until she appears for a deposition."

On July 6, 2015, the day before the scheduled deposition, the complainant filed a motion for a protective order, requesting that the court issue an order preventing the deposition from taking place for the following reasons: (1) the complainant was not given sufficient notice to schedule the deposition at a mutually convenient date and time; (2) the complainant was not given sufficient notice to allow her to gather the documents requested by the plaintiff; (3) the documents requested by the plaintiff already had been produced or were the subject of objections filed by the complainant; and (4) the complainant's discovery objections should be resolved by the court prior to her deposition.

The plaintiff claimed that she did not receive a copy of the complainant's motion for a protective order until July 8, 2015, which was one day after she had filed her motion for a capias. She also claimed that, historically, the complainant e-mailed her copies of the pleadings that she filed with the court, but that she did not do so with her motion for a protective order.

In response, the complainant contended that her husband, Michael Mathison, after filing the motion for a protective order at the courthouse on July 6, 2015, drove to the plaintiff's office and handed a copy of that pleading to a woman he identified as Rose Rodriguez, the plaintiff's legal assistant. Rodriguez, however, claimed she had been on vacation on the day in question. At that time, the only other person who worked in the plaintiff's office was Danielle Vailonis, and Vailonis denied ever receiving any documents from Mathison.

The court, *Malone, J.*, held a hearing on the plaintiff's motion for a capias, the complainant's objection to that motion, and other outstanding motions on July 27, 2015. At the beginning of the hearing, the plaintiff stated that the complainant's motion to modify child support was scheduled for a hearing on August 4, 2015. She represented that she needed information from the complainant in order to prepare adequately for the upcoming hearing on the complainant's motion scheduled for the

following week. She claimed that she had tried to schedule the complainant's deposition twice before, unsuccessfully, and that the complainant would not provide her with alternate dates and times. The plaintiff requested that the court issue a capias and then stay its execution to afford the complainant the opportunity to appear at the plaintiff's office for a deposition two days later, Wednesday at 2 p.m. The plaintiff further stated: "If she can't do Wednesday at 2 [p.m.], I'm happy to do it at 3 [p.m.]. I'll do it at 4 [p.m.]. I'll even do it after five o'clock if that's more convenient for her but I want to take her deposition." The complainant responded that she could not attend a deposition on the proposed date because she "would have to secure child care. I don't know. I have a special needs child and it's very hard. It's very difficult for me." She did not suggest an alternate date. The court ruled: "It's no problem. Until you can agree to a notice for a deposition, the hearing next week is off."

Five days prior to the hearing before Judge Malone, the complainant filed a grievance complaint with the defendant on July 22, 2015. On September 25, 2015, the Ansonia-Milford judicial district grievance panel filed a determination that there was probable cause that the plaintiff violated rules 4.4 (a) and 8.4 (4)[3] of the Rules of Professional Conduct. On February 10, 2016, a three person reviewing committee conducted a hearing on the matter. In its decision dated April 15, 2016, the reviewing committee found the following facts by clear and convincing evidence: "The [plaintiff] represented the [c]omplainant's ex-husband in a dissolution of marriage proceeding. A judgment of dissolution entered on April 24, 2009, after an uncontested hearing. In September of 2013, the [c]omplainant filed a [postjudgment] motion to modify child support. On July 3, 2015, the [c]omplainant was served with a subpoena duces tecum for a July 7, 2015 deposition at the [plaintiff's] law office. The [c]omplainant was a pro se party at the time she was served with the subpoena. On July 3, 2015, the [c]omplainant advised the [plaintiff] that she was unable to appear for the July 7, 2015 deposition and that she would be filing an objection. The [plaintiff] declined to reschedule the deposition.

"On July 6, 2015, the [c]omplainant filed an [o]bjection and a [m]otion for [p]rotective [o]rder to prevent the deposition from taking place on July 7, 2015. The [c]omplainant did not appear at the July 7, 2015 deposition. The deposition went forward. Thereafter on that same day, the [plaintiff] filed a [m]otion for [c]apias in connection with the subpoena and the [c]omplainant's failure to appear at the deposition. The [plaintiff] did not check with the [c]ourt or the [c]ourt's docket to see whether the [c]omplainant had filed a [m]otion for [p]rotective [o]rder. Ultimately, the [c]ourt did not grant the capias."

On the basis of the reviewing committee's factual findings, it found "by clear and convincing evidence" that the plaintiff violated rule 4.4 (a). It stated: "This reviewing committee concludes that the [plaintiff] engaged in unethical conduct in filing a [m]otion for a [c]apias, in connection with a subpoena duces tecum served on the [c]omplainant on July 3, 2015, for a deposition scheduled for July 7, 2015. The [plaintiff's] filing of the [m]otion for a [c]apias on the day of the deposition, with a [m]otion for [p]rotective [o]rder and an objection pending, had no substantial purpose other than to embarrass or burden the [c]omplainant, in violation of [r]ule 4.4 (a) of the Rules of Professional Conduct. The [c]omplainant had advised the [plaintiff] that she was unable to appear for the July 7, 2015 deposition and that she would be filing an objection. The [plaintiff] did not check to see whether a [m]otion for [p]rotective [o]rder had in fact been filed before filing the [m]otion for a [c]apias." After concluding that the plaintiff was in violation of rule 4.4 (a), the reviewing committee set forth sanctions to be imposed.

Upon the plaintiff's request for review pursuant to Practice Book § 2-35 (k),[4] the defendant affirmed the decision of the reviewing committee at a meeting held on June 16, 2016. The defendant stated: "The [defendant] concluded that the reviewing committee's findings, conclusions and decision that the [plaintiff] violated [r]ule 4.4 (a) of the Rules of Professional Conduct were not in excess of the authority of the reviewing committee; erroneous and contrary to law; clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. The [defendant] concluded that the decision was fully supported by the substantial evidence in the record."

Pursuant to Practice Book § 2-38,[5] the plaintiff filed an appeal with the Superior Court. In its March 9, 2017 memorandum of decision, the court found that there was "sufficient evidence in the record to support the [defendant's] conclusion" that the motion for a capias had no substantial purpose other than to embarrass or burden the complainant. In dismissing the plaintiff's appeal, the court concluded: "Having reviewed the record and considered the arguments presented to this court, the court concludes that the facts as found and the conclusion of the [defendant] are correct upon the application of the standard required." From that judgment, the plaintiff now appeals to this court.

Before considering the plaintiff's claim, we first address the standard of review applicable to grievance appeals. "[T]he clearly erroneous standard . . . is the preferable standard of review in attorney grievance appeals. . . . The clearly erroneous standard of review provides that [a] court's determination is clearly errone-

ous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . .

"Additionally, because the applicable standard of proof for determining whether an attorney has violated the Rules of Professional Conduct is clear and convincing evidence . . . we must consider whether the [fact finder's] decision was based on clear and convincing evidence. . . . [C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Citations omitted; internal quotation marks omitted.) *Chief Disciplinary Counsel* v. *Zelotes*, 152 Conn. App. 380, 386, 98 A.3d 852, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014). "The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 226, 890 A.2d 509, cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006).

Accordingly, the principal issue in this appeal is whether there is clear and convincing evidence in the record for the defendant to find that the plaintiff violated rule 4.4 (a) of the Rules of Professional Conduct. For us to make that determination, we must construe the language in that rule. "Given that the Rules of Professional Conduct appear in our Practice Book, and given that [t]he interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation . . . *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.2d 1027 (2010); we employ our well established tools of statutory construction" to determine the meaning of the relevant language in rule 4.4 (a). (Internal quotation marks omitted.) *Helmedach* v. *Commissioner of Correction*, 168 Conn. App. 439, 459, 148 A.3d 1105 (2016), aff'd, 329 Conn. 726, 189 A.3d 1173 (2018). "The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary. . . .

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a rea-

soned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Wiseman* v. *Armstrong*, supra, 295 Conn. 99–100.

In accordance with § 1-2z, we turn to the relevant language of rule 4.4 (a) of the Rules of Professional Conduct, which provides that a lawyer, in representing a client, "shall not use means that have *no substantial purpose other than to embarrass . . . or burden* a third person . . . ." (Emphasis added.) We conclude that the meaning of the rule is clear and unambiguous. An attorney is in violation of rule 4.4 (a) if he or she, in representing a client, employs resources and methods that, although not illegal, have no important or considerable purpose other than to embarrass, delay, or burden a third person. Such actions are prohibited when the attorney engages in them for no other significant purpose other than to harass the third person. It is important to note that an attorney's lawful actions taken on behalf of his or her client may often cause embarrassment or inconvenience to an opposing party or another person. The attorney does not violate the rule, however, unless the means were employed for no legitimate and considerable purpose *other than* to cause embarrassment or inconvenience to the third person.

Accordingly, for the defendant to conclude that the plaintiff violated rule 4.4 (a) of the Rules of Professional Conduct, there must be clear and convincing proof that the only significant reason that the plaintiff had for filing the motion for a capias was to embarrass or burden the complainant. We therefore must look to the factual findings of the reviewing committee to determine whether they support the conclusion that the rule was violated. The reviewing committee found: (1) the complainant, a self-represented party at the time, was served with a subpoena duces tecum to appear at a July 7, 2015 deposition at the plaintiff's office; (2) the day she was served, the complainant advised the plaintiff that she was unable to appear at the scheduled deposition and that she would be filing an objection; (3) the plaintiff declined to reschedule the deposition; (4) the complainant filed an objection and a motion for a protective order on July 6, 2015, to prevent the deposition from going forward on July 7, 2015; (5) the complainant did not appear at the scheduled deposition, but the deposition went forward; (6) the plaintiff thereafter filed a

motion for a capias on the same day referencing the subpoena and the complainant's failure to appear at the scheduled deposition; (7) the plaintiff did not "check with the [c]ourt or the [c]ourt's [d]ocket" to see if the complainant had filed a motion for a protective order before filing her motion for a capias; and (8) the court did not grant the plaintiff's motion for a capias.[6]

Significantly, the reviewing committee made no factual finding to support the conclusion that the plaintiff's action in filing the motion for a capias had no legitimate or significant purpose other than to embarrass or burden the complainant.[7] Prior to making the conclusory statement that the plaintiff violated rule 4.4 (a) of the Rules of Professional Conduct, the statement was made by the reviewing committee that the plaintiff filed the motion for a capias while the complainant's objection and a motion for a protective order were pending. There was, however, no finding that the complainant's husband had delivered a copy of her motion for a protective order at the plaintiff's office, or that the plaintiff was aware that the complainant had filed her objection and motion the day before the plaintiff filed her motion for a capias. Instead, the reviewing committee focused on the fact that the complainant was a self-represented party, that she indicated that she would be filing an objection, and that the plaintiff failed to contact the court or check the judicial website[8] to determine whether the complainant had filed such a pleading.[9]

At oral argument before this court, the defendant's counsel admitted that there is no statutory authority or Practice Book rule that would require an attorney to contact the court or to check the judicial website prior to filing a motion for a capias under such circumstances. Additionally, the defendant's counsel did not dispute that a capias properly may be requested when a party is served with a subpoena duces tecum and fails to appear for a scheduled deposition. Instead, the defendant's counsel argued that the plaintiff should have waited another day before filing her motion for a capias.

The fact that the complainant was self-represented appears to have been a factor in the reviewing committee's determination that the plaintiff violated rule 4.4 (a) of the Rules of Professional Conduct. As previously noted, it was one of the factual findings that the reviewing committee stated had been found by clear and convincing evidence in its April 15, 2016 decision. Further, a review of the transcript of the February 10, 2016 hearing before the reviewing committee reveals that one of the members of the panel had serious concerns about the self-represented status of the complainant. That member addressed the plaintiff as follows: "Yeah, but the issue here though, you're talking about a pro se [party]. So then somebody who is not a lawyer with an arrest warrant based on information that she received from her saying that she would not be able to

make the 7th. Is it your practice generally if somebody does not appear in a deposition to right away issue a capias, or do you try to somehow find another date for deposition and then go ahead and do what you need to do?" The plaintiff responded that she normally did not subpoena people to attend depositions because in most cases she coordinates a date with the attorney representing the other party. She also said that in this case, she subpoenaed the complainant because it had been a very contentious matter and that she and the complainant were unable ever to coordinate dates.

The same member of the panel subsequently made the following remarks: "In this particular instance, doing something that, honestly, you know, you're talking about a pro se person. You know, having somebody see a motion for arrest that has children to take care of, I mean, it's a scary proposition, honestly.[10] . . .

"So I think that it would have been, perhaps, much more prudent for you to go on the docket and see whether or not a motion, an objection, a [m]otion for [p]rotective [o]rder, has been filed or call the court and say, oh, by the way, you know, you may not have docketed it yet, but did somebody file an objection, a [m]otion for [p]rotective [o]rder against my motion . . . before going ahead . . . and doing a request for a capias. . . . That's my issue with this particular case not having made a—I'm not making a decision on it." (Footnote added.) When the plaintiff responded that she understood, the same member continued: "I'm just looking at issues that come up and facts that come up that do not quite make sense from a pro se perspective."[11] We note that rule 4.4 of the Rules of Professional Conduct does not impose additional obligations on an attorney when dealing with a self-represented party.[12]

For these reasons, we conclude that the court's decision that the defendant properly concluded that the plaintiff violated rule 4.4 (a) of the Rules of Professional Conduct is not based on clear and convincing evidence. The conclusory statement that the defendant demonstrated such a violation by clear and convincing evidence is belied by the dearth of proof in the record. We are particularly concerned about the determinations of the reviewing committee, the defendant, and the trial court for the reasons set forth in *Brunswick* v. *Statewide Grievance Committee*, 103 Conn. App. 601, 931 A.2d 319, cert. denied, 284 Conn. 929, 934 A.2d 244 (2007). The administration and interpretation of prohibitions against actions that a lawyer legitimately employs when zealously representing a client, which actions may cause embarrassment or inconvenience to a third person, "*should be tempered by concern to avoid overenforcement. . . .* For that reason, [t]ribunals usually sanction only extreme abuse." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 620.

Rule 4.4 (a) of the Rules of Professional Conduct "should be applied cautiously in light of its potential for chilling legitimate but difficult advocacy." Id. Danger exists that courts or disciplinary authorities might punish conduct as unethical that is the result of a simple mistake on the part of counsel, perceiving such conduct as deliberate indifference to the Rules of Professional Conduct. See id., 620–21. In the present case, the plaintiff filed a motion for a capias and stated that no objection or motion to quash had been filed. She was mistaken; there was no clear and convincing proof to the contrary. Moreover, there was no clear and convincing proof that she filed the motion for no substantial purpose other than to embarrass or burden the complainant. Accordingly, because the evidence in the record does not support the court's determination, we order that the sanctions be vacated. See *Shelton* v. *Statewide Grievance Committee*, 277 Conn. 99, 111–12, 890 A.2d 104 (2006).

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal and vacating the sanctions imposed by the reviewing committee.

In this opinion the other judges concurred.

[1] Rule 4.4 (a) of the Rules of Professional Conduct provides: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

[2] Melissa Mathison was formerly known as Melissa Samoncik. Following her divorce from Jeffrey Samoncik, she married Michael Mathison.

[3] The reviewing committee determined that the record lacked clear and convincing evidence that the plaintiff violated rule 8.4 (4) of the Rules of Professional Conduct, and that determination was not challenged.

[4] Practice Book § 2-35 (k) provides in relevant part: "Within thirty days of the issuance to the parties of the final decision by the reviewing committee, the respondent may submit to the Statewide Grievance Committee a request for review of the decision. . . ."

[5] Practice Book § 2-38 (a) provides in relevant part: "A respondent may appeal to the Superior Court a decision by the Statewide Grievance Committee or a reviewing committee imposing sanctions or conditions against the respondent . . . . A respondent may not appeal a decision by a reviewing committee imposing sanctions or conditions against the respondent if the respondent has not timely requested a review of the decision by the Statewide Grievance Committee under Section 2-35 (k). . . ."

[6] The reviewing committee failed to note Judge Malone's actual ruling on the plaintiff's motion for a capias and the complainant's objection to that motion. The court's order was as follows: "Until there is an agreement on a deposition date and time then no hearing on a modification of child support can take place. Hearing off."

[7] At the hearing before Judge Malone on July 27, 2015, the plaintiff represented that the hearing on the complainant's motion to modify child support was scheduled for August 4, 2015, and that she had tried, without success, to schedule the complainant's deposition in preparation for that hearing. The plaintiff indicated that she had noticed the complainant's deposition twice, but that the complainant was "completely interfering with the discovery process, I can't even get her to appear for a deposition." The plaintiff then asked the court to issue the capias, but to stay its execution in order to afford the complainant the opportunity to appear for a deposition at the plaintiff's office.

[8] The record reflects that the family matter at issue between the plaintiff's client and the complainant was not an electronically filed case. If a party files a pleading electronically, the time and date of the filing is available for verification shortly after the filing. This family case is a paper file; the

pleadings are in paper form and are mailed, faxed or hand-delivered to the office of the court clerk. The clerk date stamps the pleading upon receipt (the "official" filing date), but data entry of that pleading into the court's computer system frequently is not made the same day that the pleading is received. The defendant's counsel conceded at the hearing before the reviewing committee that although the complainant's objection and the motion for a protective order were delivered to the court and have an official filing date of July 6, 2015, there is no evidence as to when data entry of those filings actually occurred. Accordingly, there is no evidence as to when those filings were available for opposing counsel to view. As noted by the plaintiff's counsel, and not disputed by the defendant's counsel, data entry of those filings could have been made "on July 6th or July 7th or July 8[th] or any other time."

[9] At the hearing before the reviewing committee, the plaintiff testified that she had no reason to check with the court to see if the complainant had filed a motion for a protective order because, historically, the complainant copied her on motions via e-mail. The complainant did not dispute that representation.

[10] In his closing argument before the reviewing committee, the plaintiff's attorney stated: "It is clear that a lawyer has a right to file an application for a capias. An application is not a capias. Somebody isn't getting [arrested]. Whether or not the pro se litigant understood that is irrelevant to the lawyer's ethical obligations."

[11] Although this panel member suggested that different rules should apply when interacting with a self-represented party, it is well settled that "the right of self-representation provides no attendant license not to comply with relevant rules of procedure and substantive law." (Internal quotation marks omitted.) *Anghel* v. *Saint Francis Hospital & Medical Center*, 118 Conn. App. 139, 139 n.1, 982 A.2d 649 (2009), cert. denied, 294 Conn. 932, 986 A.2d 1055, cert. denied, 559 U.S. 1069, 130 S. Ct. 2111, 176 L. Ed. 2d 726 (2010).

[12] We do not determine that the fact that the complainant was self-represented may not be introduced for the purpose of giving the fact finder the entire relevant context of the plaintiff's conduct. We determine only that the particular evidence that she was a self-represented party does not of itself provide a proper basis for an adverse inference that the plaintiff violated rule 4.4 (a) of the Rules of Professional Conduct.

---